## W. H. RUSSELL ET AL. v. PHIL. P. CAGE ET AL.

### (Case No. 5785.)

1. COMMISSIONERS COURT—DELEGATED AUTHORITY—A commissioners court cannot delegate to an architect its authority to make a contract to construct a courthouse, but can authorize him to make a contract subject to its approval. See opinion and statement of facts for a petition not alleging with sufficient clearness an illegal delegation of authority.

2. BONDS ISSUED BY COUNTY—ACT OF FEBRUARY 11, 1881—CONSTRUCTION—The third section of the act of February 11, 1881, limits the amount of bonded indebtedness authorized by the law. This is not such an amount as *will* be paid in ten years, as the act provides that the bonds may run for fifteen years, but such as *may* be paid by the prescribed tax in ten years.

3. SAME—The sum for which bonds may be issued is the sum which, together with interest at the given rate, could be liquidated by the annual stated payment. See statement of facts for method of calculation held in accordance with the design of the law.

APPEAL from Hays. Tried below before the Hon. H. Teichmueller.

This was a suit for injunction by W. H. Russell and twenty-four other citizens and tax-payers of Blanco county, Texas, for themselves, and in behalf of all the other citizens and tax-payers of that county, against the commissioners court of Blanco county, W. A. Blackwell,

county treasurer, Phil. P. Cage and C. P. Boon, to restrain the commissioners court from issuing and delivering to Cage and Boon twenty-seven thousand dollars in bonds, in payment for the construction of a courthouse to be built by Cage and Boon, and to restrain the county treasurer from investing the bonds in the school fund of the county, and from selling any of the bonds. Also to restrain Cage and Boon from disposing of the bonds and from building the courthouse.

The petition for injunction was presented to the Hon. A. W. Morsund, judge of the thirty-third judicial district, on May 3, 1885, and was by him granted. In pursuance of the order the writ of injunction was issued by the clerk of the district court of Blanco county, Texas, on May 14, 1885. This cause having been regularly reached at the June term, 1885, of the district court of Blanco county for trial, upon motion of plaintiffs for change of venue was transferred to Hays county, Texas. On motion of defendants the injunction granted was dissolved by the district judge of Hays county, on July 21, 1885.

At the September term, 1885, of the district court of Hays county, the demurrer and exceptions of defendants to plaintiff's petition were sustained, plaintiffs declined to amend, and judgment was granted by the court dismissing the cause at plaintiffs' costs.

Among other things, the petition alleged, "that the commissioners court, at a special term of that court, to wit, on March 12, 1885, * * * made an order appointing F. E. Ruffini, a citizen of Travis county, Texas, the agent of Blanco county, Texas, and empowered him to make a contract for the court with whomsoever he chose for the erection and construction of the courthouse, for any sum not to exceed the amount of $26,000, in Blanco county courthouse bonds; and on the same day, further ordered that the court meet on March 21, 1885, to pass on the contract made by Ruffini.

"Plaintiffs further aver that Ruffini, on March 21, 1885, without advertising for bids for the construction of the courthouse in any manner, quietly and secretly, as the agent of Blanco county, * * * then and there entered into a written contract with the defendants, Phil. P. Cage and C. P. Boon, for the erection and construction of the courthouse for the sum of $25,970." The contract was then set out. "That on said day the contract was executed by Ruffini, as the pretended agent of Blanco county, and by Cage and Boon, in behalf of themselves, and on the same day duly acknowledged and mutually delivered. * * * * * That on April 11, 1885, the commissioners court ordered, and caused to be issued, and delivered to Cage and Boon, under the contract, $10,000 in Blanco county bonds, etc. * * * *

"That the court combined, conspired and confederated with Ruffini, the pretended agent of the county of Blanco, and authorized him in behalf of the county to make a contract with any one he chose, without in any manner, advertising for bids; plaintiffs further aver that they are informed and believe that when Ruffini was appointed the agent of Blanco county it was understood and agreed between him and the court that he was to award the contract to Cage and Boon. * * * * Plaintiffs further aver that the contract so entered into by Ruffini, as the pretended agent of Blanco county, Texas, and Cage and Boon * * is wholly null and void. * * because, under the constitution of this state, said court cannot delegate the performance of its functions, powers and duties to Ruffini, or any one else."

Attorneys for appellants submitted the following calculation to show that under the act of February 11, 1881, the commissioners' court had violated the law by creating too heavy a debt. The bonds could lawfully run fifteen years. It is true they could be redeemed sooner, but that was at the option of the county. Take the $27,000, in this case, and let it run for fifteen years at eight per cent. per annum, and the result is, interest $32,400; interest and principal, $59,400.

The taxable wealth of Blanco county was $1,750,000. A tax of one-fourth of one per cent. would be $4,375 annually, levied for ten years would amount to $43,750. Thus the courthouse would have cost $15,750 more than a tax of one-fourth of one per cent. annually would have liquidated in ten years.

Attorneys for appellees offered this system of calculation: The amount of bonds issued was $27,000. There was, therefore, $4,375 to be applied annually for the liquidation of these bonds, which bore eight per cent. interest. The mathematical problem may be stated as follows: What is that sum bearing eight per cent. interest which $4,375 applied annually, would in ten years liquidate? For that determines the amount of such bonds to be issued. The same problem is stated in another form: What amount of debt, bearing eight per cent. interest, will $4,375 annually received and applied discharge in ten years? Or what is the present value of $4,375, to be received annually for ten years, money at eight per cent.? For it is obvious that this present value is that sum which, bearing eight per cent. interest, would be discharged by such annual payments of $4,375 in ten years.

The present value of one dollar, due in twelve months, is found by dividing one dollar by 1+the rate of interest, adding the rate for each subsequent year through the term of ten years, as it may fall due. Hence, the statement of the problem is as follows:

$4,375÷1.08=the present value, due in  1 year.
$4,375÷1.16=the present value, due in  2 years.
$4,375÷1.24=the present value, due in  3 years.
$4,375÷1.32=the present value, due in  4 years.
$4,375÷1.40=the present value, due in  5 years.
$4,375÷1.48=the present value, due in  6 years.
$4,375÷1.56=the present value, due in  7 years.
$4,375÷1.64=the present value, due in  8 years.
$4,375÷1.72=the present value, due in  9 years.
$4,375÷1.80=the present value, due in 10 years.

Now, it will be observed that these divisors form an arithmetical progression, and that their mean divisor is 1.44, which, divided into $4, 375, and the result multiplied by 10, the number of terms, shortens the solution, and accordingly we find.

$$\$43,750÷1.44=\$30,382.$$

*R. H. Ward* and *Geo. F. Pendexter*, for appellants, as to the debt contracted being excessive, cited: Act of February 11, 1881, pp. 5, 6; Act of February 14, 1884, p. 29; Act of March 27, 1885, pp. 5, 6; Robertson v. Breedlove, 61 Tex., 316; Cooley on Const. Lim. 269, 270, 215 and notes 2 and 3 on page 269, and note 1 on page 270; Smith v. Cheshire, 13 Gray, 318; Gould v. Sterling, 22 N. Y., 457; Andover v. Grafton, 7 N. H., 298; Clark v. DesMoines, 19 Ia, 199; McPherson v. Foster, 43 Ia., 48; Bissill v. Kankakee, 54 Ill., 249; Big Grove v. Wells, 65 Ill., 263; Elmwood v. Marcy, 92 U. S., 289; Concord v. Portsmouth Savings Bank, 92 U. S., 625; St. Joseph v. Rogers, 16 Wall., 644; Pendleton Co. v. Amy, 13 Wall., 297; Marsh v. Fulton Co., 10 Wall., 676; East Oakland v. Skinner, 94 U. S., 255.

On agency, they cited: Constitution of 1876, art 5, sec. 18; Wynns v. Underwood, 1 Tex., 49; Andrews v. Beck, 23 Tex., 455; Willis v. Owen, 43 Tex., 62; Cooley on Const. Lim., 505, 506 and note 1; pages 249, 250 and notes; page 116 and notes; page 139 and notes, 4th ed.; Van Slyke v. Ins. Co., 39 Wis., 399; Boone on Corp., secs. 98, 104; Taymouth v. Koehler, 35 Mich., 22.

*L. W Moore,* and *W. O. Hutchison,* for appellees.

ROBERTSON, ASSOCIATE JUSTICE.—The commissioners court could not delegate to Mr. Ruffini their authority to make a contract to construct a courthouse. They could very properly employ an architect to prepare plans and specifications and make a draft of a contract, and

they could authorize him to make the contract itself, subject to the
approval of the commissioners. The averments of the plaintiff's peti-
tion of Ruffini's agency are very general and vague, and though their
attention was called to this condition of their pleading by the excep-
tions, they elected not to amend, when the exceptions were sustained.
We may assume that a more specific averment of facts would have
involved them in greater difficulties. It did not definitely and dis-
tinctly appear from the allegations of the petition that the official re-
presentatives of the county had attempted to delegate their authority,
or that they did not reserve to themselves the final duty entrusted to
them of passing upon and executing the contract for the construction
of the courthouse, and there was no error in sustaining exceptions to
this part of plaintiffs' case.

The other question presented is, whether a tax of one-fourth of one
per cent. levied annually for ten years upon $1,750,000 of property
will liquidate $27,000 of bonds bearing interest at the rate of eight
per cent. per annum. Act of February 11, 1881, sec. 3. The bonds may
run for fifteen years, redeemable at the pleasure of the county, they
are not required to be paid in ten years, but no more shall be issued
than *will*, that is, *may* or *can*, be liquidated by the given tax in the
stated period. The third section of the act does not provide for the
payment of the bonds, but limits the amount of bonded indebtedness
authorized by the law. This cannot be such an amount as *will* be
paid in ten years, when the act expressly provides that the bonds may
run for fifteen years, but the amount is such as *may* be paid by the
prescribed tax in ten years. The county is to ascertain the limit upon
its power to issue bonds by solving the problem put in the third sec-
tion. The result of that calculation depends upon the time and manner
of applying the proceeds of the tax, not actually in the future, but in
the calculation. The actual application of the proceeds not required
to pay the current interest is left to the pleasure of the county; the
question is not what the county's pleasure will be, which cannot be
determined in advance, but in figuring out the sum which is to be the
limit upon the power of the county to issue bonds, the question is,
how shall the proceeds of the annual tax be applied in the required
calculation. If it is figured that nothing will be paid upon the prin-
cipal until the maturity of the bonds, the prescribed limit is exceeded.
On the other hand, if the proceeds of the tax not required for current
interest are applied annually to the liquidation of the principal, the
county has not transcended its authority.

The object of the law was to fix an uniform and certain standard of
authority, applicable to all counties. This standard is gauged by the

financial condition of the county. The interest it has to pay depends upon its credit, and the amount of the debt the county may incur depends directly on the interest borne by the bonds and its taxable wealth. These are the given factors, from which to ascertain the extent of the county power. There is no element of uncertainty. The sum for which bonds may be issued is the sum which, together with interest at the given rate, could be liquidated by ten annual stated payments.

But the appellant contends that the amount to be paid depends upon the length of time the bonds have to run. What this time is, the county board fixes, not to exceed fifteen years under the act of 1881, and not to exceed twenty-five under the act of 1885. The power of the county board would thus depend in a large measure upon themselves. The complaint here would then be, not that the board had exceeded the authority conferred upon them by law, but that by their own mismanagement they have taken from themselves the power they could have obtained and intended to exercise. If the calculation is to be affected at all by the time the bonds have to run, and this time is fixed by the board, the limit upon the power of the county, intended to be uniform and certain, is neither. We cannot assent to this view of the statute. The legislative intent to make a fixed standard of authority would be defeated by the method of calculation contended for by appellants. The methods illustrated in the brief of appellee's counsel are consistent with all the provisions of the law, and contributive to its plain design. Tested by them the county has not exceeded her authority.

The appellants urge but the two points in this court, and as neither is considered well taken, the judgment below is affirmed.

AFFIRMED.

[Opinion delivered June 11, 1886.]