## FRANCIS v. HOWARD COUNTY.

*(Circuit Court, W. D. Texas, El Paso Division. April 9, 1892.)*

1. COUNTIES—BONDS—EXCESSIVE ISSUE—INNOCENT PURCHASERS.

Under Gen. Laws Tex. 1881, pp. 5, 6, authorizing counties to issue bonds for the erection of court-houses, Howard county issued bonds in May, 1883, which, on account of an error, were recalled and canceled, and a new series issued in November, 1883. Between these dates an amendment to the constitution was adopted, reducing the rate of taxation allowed to be levied by counties for the erection of public buildings. The plaintiff bought in open market some of the bonds issued in November, 1883, and sues for the interest due upon them. *Held*, that he was a purchaser with notice of the constitution as amended, and that, as he claimed no interest under the contract for the erection of the court-house, the amendment applied to the bonds in his hands.

2. SAME—AUTHORITY TO ISSUE BONDS—STATE LAWS.

While counties generally have no power to issue negotiable securities unless specially authorized by law, this is a question of state policy, and should be governed by the decisions of the state courts.

3. SAME—LAWS OF TEXAS.

In Texas, the counties, in the absence of legislative authority, have no power to issue negotiable securities. *Nolan Co.* v. *State*, (Tex. Sup.) 17 S. W. Rep. 826; *Robertson* v. *Breedlove*, 61 Tex. 316, followed.

4. SAME—INNOCENT PURCHASERS—BONDS PARTLY INVALID.

The bonds issued by a county in excess of the amount allowed by law are void, and their collection cannot be enforced even by a *bona fide* purchaser for value; and when a number of bonds, partly invalid on this account, are issued and delivered at the same time, or at different times as part of one transaction, the invalid portion should be equally distributed among all, and none should have priority.

5. SAME—AMOUNT ISSUABLE.

Gen. Laws Tex. 1881, pp. 5, 6, § 1, confers authority upon counties "to issue bonds in such amount as may be necessary to erect a suitable building for a court-house;" but section 3 of the same act declares that the county shall not issue a larger number of bonds than can be liquidated in 10 years by an annual tax of one-fourth of 1 per cent. upon the property in the county. *Held*, that the latter section must be construed as a limitation upon the former. *Russell* v. *Cage*, 1 S. W. Rep. 270, 66 Tex. 432, and *Nolan Co.* v. *State*, (Tex. Sup.) 17 S. W. Rep. 826, followed.

6. SAME—NOTICE.

In ascertaining the taxable value as a basis for determining the amount of bonds which may be issued, the official assessment rolls are the only evidence, and, these being public records, the purchasers of the bonds, notwithstanding any recitals therein, are chargeable with notice of them, and cannot claim to be innocent purchasers.

7. SAME—APPLICATION OF PROCEEDS—ESTOPPEL.

If a county has authority to issue bonds for one purpose, and uses the proceeds of such bonds for a different purpose, they are not thereby invalidated in the hands of an innocent purchaser, and the county is estopped from denying that they were issued for the purpose for which they purported to be issued.

8. SAME—ENFORCEMENT OF BONDS—JURISDICTION AT LAW.

While a suit in equity is ordinarily required to settle the equities and rights of bondholders against a county and among themselves, yet a court of law will give judgment in such cases when warranted by the pleadings and proofs.

At Law. Action by David R. Francis against Howard county, Tex., to recover upon coupons of county bonds.

Statement by MAXEY, District Judge:

This suit is brought by plaintiff to recover of defendant upon 136 interest coupons for $80 each, originally attached to certain negotiable court-house bonds, issued by defendant on the 12th day of November, A. D. 1883. It is alleged in the petition that said bonds were duly signed, sealed, countersigned, and registered as required by law; that by the terms of each of said bonds the county promised to pay to J. H. Milliken & Co. or bearer the sum of $1,000 at the banking-house of Donnell, Lawson & Simpson, in the city and state of New York, 15 years from the date thereof, with interest at the rate of 8 per cent. per annum, payable annually, in installments of $80 each, on the 10th day of April in each year, at said banking-house, on presentation and surrender of the proper interest coupons annexed to the bonds. The petition further alleges that said bonds, numbered 2 to 40, inclusive, were issued by the defendant county under authority of an act of the legislature of the state of Texas entitled "An act authorizing the county commissioners' court of the several counties of this state to issue bonds for the erection of a court-house, and to levy a tax for the same," approved February 11, A. D. 1881, and in pursuance of an order of the county commissioners' court of said county for the purpose of erecting a suitable building for a court-house. Recovery is sought upon four sets of interest coupons, as follows: (1) 39 coupons, numbered 5, detached from bonds numbered 2 to 40, due April 10, 1888; (2) 39 coupons, numbered 6, detached from bonds numbered 2 to 40, due April 10, 1889; (3) 29 coupons, numbered 7, detached from bonds numbered 2 to 30, due April 10, 1890; (4) 29 coupons, numbered 8, detached from bonds numbered 2 to 30, due April 10, 1891.

The following averments of the defendant's answer present, substantially, the defenses relied upon to defeat a recovery upon the coupons:

"That defendant did not at any time execute and deliver, or authorize the execution and delivery of, more than 35 coupon bonds of the denomination of $1,000 each, and numbered 1 to 35, inclusive, and of the aggregate amount of $35,000, for the purpose of erecting a court-house. The defendant further says that if it ever issued, or ever authorized the execution and delivery of, any of said bonds, that the same were executed and delivered for the purpose of erecting a court-house and jail, and for the purpose of sinking an artesian well, and not for the sole purpose of erecting a court-house for the defendant. * * * And for further plea herein the defendant says that plaintiff ought not to have and recover judgment herein against this defendant for the following reasons, to-wit: *First.* Because defendant says that if any issuance, execution, registration, or delivery of said bonds, or their attached coupons, sued on by plaintiff, was ever authorized by the commissioners' court of said defendant, Howard county,—and which fact defendant specially denies,— that the same was *ultra vires,* contrary to law, and above and beyond the powers conferred upon said board of commissioners, officers, and agents by law, for the following reasons, to-wit: Because at the time of the pretended issuance, execution, and delivery of said bonds and attached coupons sued on by plaintiff, and at the time of the creation of said pretended indebtedness, the total value of all the taxable property in Howard county amounted only to the sum of eight hundred and sixty-three thousand and eleven and 38-100

dollars; and that said board of commissioners, officers, and agents had no power or authority of law whatever to bind this defendant in a bonded indebtedness for said purpose alleged in plaintiff's petition, except in such an amount as a tax of one-fourth of one per cent. on said taxable wealth of defendant at that time might, could, or would liquidate, pay off, and discharge, after being levied, collected, and applied thereon for a period of ten years, which said amount of said bonded indebtedness defendant alleges could not have lawfully exceeded the sum of fifteen thousand dollars, bearing interest at the rate of 8 per cent. per annum; and that the issuance, execution, and delivery of $39,000 in bonds, with interest-bearing coupons attached thereto, and of which those sued on by plaintiff are alleged to be a part, was so far in excess of the amount authorized to be issued by the said officers and agents of this defendant that this defendant is, and has always been, wholly unable to meet, pay off, discharge, or liquidate the annual interest accruing and accrued thereon by the levy and application of a tax of one-fourth of one per cent. on the taxable value of defendant annually, and that for these reasons the bonds and all coupons attached thereto, and those sued on by plaintiff, are wholly invalid, and no legal and subsisting indebtedness against this defendant. *Second.* Because defendant further alleges that it, through its officers and agents, the commissioners' court, on the 29th day of May, 1883, entered into an agreement with J. H. Milliken & Co. to build and erect for it a courthouse and jail in consideration of $33,700 of Howard county bonds, bearing interest at the rate of 8 per cent. per annum, and dated May 14, 1883; that, in pursuance of said agreement, the said J. H. Milliken & Co. erected and completed a court-house and jail for defendant; that said bonds of date May 14, 1883, were executed and delivered to said Milliken & Co., and accepted by them, in payment for erecting said court-house and jail; that, if defendant executed and delivered or authorized the execution and delivery of the bonds and coupons described by plaintiff,—which is not admitted, but denied,—that $35,000 of the same—that is, 35 of said bonds—were issued for the purpose of liquidating, paying off, and discharging said bonds of date May 14, 1883, and not for the purpose of erecting for defendant a suitable court-house, as claimed by plaintiff; that at the time of the execution of said bonds of date May 14, 1883, defendant, its officers and agents, made no provision for the levy and collection of a sufficient tax to pay the interest thereon, or to provide a sinking fund for the redemption thereof; that at the time of the making of said contract with J. H. Milliken & Co. the defendant, its officers and agents, made no provision for the levy and collection of a tax for the payment of said debt, or any part thereof. * * *"

A jury was waived by the parties by written stipulation, and the case submitted to the court. From the evidence before the court the following findings of fact are made:

1. The defendant, county of Howard, is a municipal corporation of Texas, organized under its laws in the year 1882.

2. On April 16, 1883,—the date of the order of commissioners' court of Howard county, awarding the contract to build a court-house and jail to J. H. Milliken & Co.,—Howard county had neither court-house nor jail.

3. The following orders were duly made by the commissioners' court of Howard county at the date therein named, in relation to the construction of a court-house and jail, and the boring of an artesian well, and the issuance of bonds for court-house purposes:

(1) "April 16th, 1883.

"Ordered by the commissioners' court that the contract for the erection of a court-house and jail therein, in Big Springs, Howard county, Texas, be, and is hereby, awarded to J. H. Milliken & Co., of Weatherford, Texas,

for the sum of thirty-three thousand seven hundred dollars, payable in Howard county bonds.

(2) "April 16th, 1883.

"Ordered by the court that the county attorney, assisted by T. W. Wampler, draw up a contract according to the bid, plans, and specifications submitted by J. H. Milliken & Co., stipulating in said contract that J. H. Milliken & Co. give bond in the sum of fifty thousand dollars for the faithful performance of said contract according to the time agreed upon by and between the commissioners, and embodied in said contract, as follows, to-wit: *To the Honorable County Judge and County Commissioners of Howard County, Tex.*—GENTLEMEN: We propose to build the court-house and jail combined, as shown by plans, and defined by the accompanying specifications, in the town of Big Springs, Howard Co., Texas, for the sum of thirty-three thousand seven hundred dollars, payable in the court-house bonds of Howard Co., Texas, and we agree to complete said building and deliver same to county commissioners' court within eight months from date of this bid. Respectfully submitted, J. H. MILLIKEN & Co. *April 16th, 1883.*'

(3) "May 14th, 1883.

"It is ordered by the court that so much of the county funds created by the issuance of county bonds, and known as 'Court-House Bonds,' be, and the same is hereby, appropriated for grading the court-house square.

(4) "May 14th, 1883.

"Ordered by the court that the sum of three thousand ($3,000.00) dollars, or so much thereof as may be necessary, be, and the same is hereby, appropriated out of the funds created by the issuance of county bonds, and known as 'Court-House Bonds,' be, and the same is hereby, appropriated for the purposes of sinking an artesian well on the north-west corner of the court-house square.

(5) "May 14th, 1883.

"In accordance with a previous order of this court, made at its regular February term, 1883, it is hereby ordered, adjudged, and decreed that Howard county bonds, to be known and designated as 'Court-House Bonds,' amounting to thirty-eight thousand ($38,000.00) dollars, bearing interest at the rate of 8 per cent. per annum, be issued for court-house purposes, and held subject to the disposition of this court.

(6) "May 29th, 1883.

"It is further ordered by the court that court-house bonds to the amount of two thousand ($2,000.00) dollars be issued in addition to the $38,000.00 (thirty-eight thousand dollars) ordered issued heretofore, making a total up to this date of $40,000.00, (forty thousand dollars,) ordered issued by commissioners' court of Howard county, Texas.

(7) "June 18th, 1883.

"It was ordered by the court that the First National Bank of Weatherford be, and is hereby, ordered and required to deliver to J. H. Milliken & Co. the sum of thirty-five thousand dollars ($35,000.00) in Howard county court-house bonds.

(8) "June 18th, 1883.

"Ordered by the court that the First National Bank of Weatherford be, and it is hereby, authorized to dispose of the remaining five thousand dollars of court-house bonds of Howard county, Texas, now on deposit in said bank, at their face value, and credit Howard county with the proceeds, less 2½ per cent. commission.

(9) "November 12th, 1883.

"Ordered by the court that, whereas, there is an error in the bonds heretofore issued by the county of Howard, state of Texas, bearing date May 14th, 1883, for the purpose of erecting a court-house for Howard county, which er-

ror consists in this: The date of the approval of the act of the legislature of the state of Texas authorizing the issuance of said bonds is on the face of the bonds recited to be Feby. 21st, 1879, when it should have been Feby. 11th, 1881, the said bonds having in fact been issued under the last-named act, in lieu of said bonds: Therefore ordered by the court that there be issued for the purpose of erecting a suitable building for a court-house for said county of Howard, in the state of Texas, thirty-five coupon bonds of the said county of the denomination of one thousand dollars each, payable to J. H. Milliken & Co. or bearer fifteen years after the date thereof, and redeemable at the pleasure of the said county: The said bonds shall bear interest at the rate of eight per cent. per annum. The principal and interest of the said bonds shall be payable at the banking-house of Donnell, Lawson & Simpson, in the city of New York. The interest on the said bonds shall be payable on the 10th day of April annually.

(10) "November 12th, 1883.

"It is ordered by the court that the bonds to be issued as heretofore at this time be delivered to J. H. Milliken & Co. on the cancellation and surrender by them of thirty-five thousand dollars' worth of the bonds referred to in said order as having been issued before that date, with an erroneous reference to the act of the legislature of the state of Texas under which they were issued. The corrected bonds are to be delivered to J. H. Milliken & Co., in lieu of the erroneous bonds, upon the cancellation and surrender of the erroneous bonds, and in an amount corresponding with the amount of the erroneous bonds. canceled and surrendered. It is further ordered by the court that on the surrender of the bonds heretofore issued as herein provided for, a draft shall be issued in favor of J. H. Milliken & Co. against the court-house funds of this county for all interest that has accrued on the first bonds issued up to the date of issuing the new or substituted bonds herein provided for.

(10½) "November 12th, 1883.

"Ordered by the court that an annual *ad valorem* tax of one-fourth of one per cent. on the taxable property of Howard county, Texas, be, and the same is hereby, levied, to pay the interest and create a sinking fund for the redemption of bonds of said county, necessary to erect a suitable building for a court-house, as authorized by an act of the legislature of the state of Texas, approved February 11th, 1881.

(11) "February 14th, 1884.

"Ordered by the court that the balance of five thousand dollars court-house bonds may issue, in accordance with law, to any one who may agree to take same at their face or par value, and may be subject to the disposition of Geo. Hogg, county judge, or his successors in office.

(12) "March 24th, 1884.

"Ordered by the court that the forty thousand dollars in Howard county court-house bonds, erroneously issued on the 14th day of May, 1883, be, and they are hereby, ordered canceled and destroyed, and that the county treasurer be required to drop said amount from his register.

(13) "August 19th, 1884.

"It is further ordered that county court-house bond for $1,000.00, No. 36, be, and the same is hereby, turned over to R. R. Elder, artesian well contractor, as collateral for the payment of the sum of $1,000.00, part of balance due him, the said contractor, on the closing of said contract.

(14) "March 1st, 1886.

"It was ordered by the court that all coupons on Howard county court-house bonds Nos. 37, 38, 39, and 40, for $1,000.00 each, up to April 10th, 1886, be detached, and destroyed by the county treasurer.

(15) "March 1st, 1886.

"It was ordered by the court that A. D. Walker deposit said bonds Nos. 37,

38, 39, and 40 in Colorado National Bank, in accordance with the terms of aforesaid contract.

(16) "August 11th, 1886.

"We, the commissioners of Howard county, hereby declare that F. H. James & Co. have failed to comply with their contract in reference to the boring an artesian well upon the court-house square in said Co., and, as the said F. H. James & Co., through their agent, desires to surrender said contract, we accept their proposition, and declare the contract null and void upon the surrender of the bonds and contract now deposited at the Colorado National Bank, in Mitchell county, Texas; and we further authorize J. C. Smith to demand and receive said four bonds of the denomination of $1,000 each, with said contract, and the obligation the citizens of Howard county signed, deposited together.

(17) "September 13th, 1886.

"We, the commissioners' court of Howard county, Texas, authorize I. S. Thurmond, county judge of said county, to go to St. Louis and Chicago, and purchase a complete outfit for boring an artesian well on the court-house square in said county for the court-house and county purposes. He is authorized to take the remainder of the court-house bonds, amounting to $4,000.00, Nos. 37, 38, 39, and 40. He is further authorized to negotiate said bonds, or so much of them as is necessary to pay for said outfit, and cash the remainder of them, or cash the entire $4,000.00 bonds, and purchase the same with cash, and pay J. W. Hykes' expenses to go along with him.

(18) "October 4th, 1886.

"Ordered, that of the bonds heretofore issued by the commissioners' court of Howard county for court-house purposes, that bonds Nos. 40, 39, 38, and 37 be paid first in order named, and that at least one bond and interest in full be paid out of the court-house funds in April, 1887, and at least two of said bonds and interest in full in April, 1888.

(19) "February 13th, 1888.

"It was ordered by the court that the treasurer of Howard Co. be instructed not to pay any interest on court-house and jail bonds till further orders from this court."

4. A contract, of which the following is a copy, was entered into May 29, 1883, between J. H. Milliken & Co. and Howard county, for the construction of a court-house and jail:

"This agreement, made the 29th day of May, one thousand eight hundred and eighty-three, between J. H. Milliken and James Lee, operating and doing business under the firm name and style of J. H. Milliken & Co., party of the first part, and George Hogg, county judge of Howard county, Texas, and G. A. Torbett, Frank Boze, R. M. Bressie, and W. T. Boze, county commissioners of Howard county, Texas, and their successors in office, party of the second part, witnesseth, that the said J. H. Milliken & Co., party of the first part, for considerations hereinafter named, contracts and agrees with the said George Hogg, county judge of Howard county, Texas, and G. A. Torbett, Frank Boze, R. M. Bressie, and W. T. Boze, county commissioners of Howard county, Texas, and their successors in office, that the said J. H. Milliken & Co. will, within eight months next following this date, in a good and workman-like manner, and according to his best skill, well and substantially erect and complete a court-house and jail in the town of Big Springs, Howard county, Texas, on block No. 21, as laid down and described in the plat of the town of Big Springs, situated in the county of Howard and state of Texas. In consideration of which the said George Hogg, county judge of Howard county, and G. A. Torbett, Frank Boze, R. M. Bressie, and W. T. Boze, county commissioners of Howard county, Texas, party of the second part, do for the county of Howard and their successors in office promise to

the said J. H. Milliken & Co., their heirs or legal representatives, to issue or
cause to be issued to the said J. H. Milliken & Co., or their legal representa-
tives, bonds drawn on Howard county in the sum of thirty-three thousand
seven hundred dollars, ($33,700.00,) with interest thereon at the rate of eight
per centum per annum, at their next regular meeting next after the first day
of May, A. D. 1883, and which said bonds are to be deposited in the First
National Bank of Weatherford, Parker county, Texas, to the credit of How-
ard county, Texas, and to be subject to the order of the commissioners' court
of Howard county, Texas, for the benefit of J. H. Milliken & Co.

"J. H. MILLIKEN.
"JAMES LEE.
"J. W. HEDRICK.
"A. L. SIMMONS.
"Witness to attached                "H. E. SWAIN.
   signatures:                       "H. M. LASSATER.
   "A. N. GRACT.                     "JOE SIMPER.        C. H. MILLIKEN.
   "W. B. JOHNSON.                   "D. C. KYLE.
"Accepted May 29th, 1883.
                    "GEO. HOGG, County Judge Howard County, Texas.
   "J. M. ANDERSON, Clk. County Ct. Howard Co."

5. In obedience to the orders of the commissioners' court of May 14, 1883,
and May 29, 1883, the bonds of Howard county were issued amounting to
forty thousand dollars, to be known and designated as "Court-House Bonds."
Of these, the First National Bank of Weatherford, as per the order of the
commissioners' court of June 18, 1883, delivered to J. H. Milliken & Co.
bonds amounting to the sum of thirty-five thousand dollars. The remaining
five thousand dollars of that issue of the bonds, although authorized to be
sold by the Weatherford bank, were not negotiated, but were, with those of
Milliken & Co. for thirty-five thousand dollars, returned to the defendant,
and destroyed.

6. The issue of forty thousand dollars of bonds was canceled and destroyed
because of a misrecital in the bonds as to the date of the approval of the act
which authorized their issuance. The date recited was February 21, 1879,
when it should have been February 11, 1881.

7. On the 12th day of November, 1883, the defendant, in conformity with
the two orders of the commissioners' court of the same date,—November 12,
1883,—executed 35 coupon bonds, for court-house purposes, of one thousand
dollars each, payable to J. H. Milliken & Co. or bearer fifteen years after
the date thereof, and redeemable at the pleasure of the county. This second
issue of 35 bonds was given to Milliken & Co. in lieu of the erroneous first
issue of thirty-five thousand dollars held by them, the second issue having
been delivered after November 22, 1883, and before the destruction of the
first. Of the second issue of 35 bonds No. 1, was redeemed in April or May,
1886, and the remainder, from 2 to 35, inclusive, are represented by coupons
in suit.

8. The first and only tax to pay the interest and create a sinking fund for
the redemption of the bonds was levied November 12, 1883.

9. In compliance with the order of the commissioners' court of February
14, 1884, five other bonds of $1,000 each, numbered, respectively, 36, 37, 38,
39, and 40, were issued. One of these, No. 36 was, after August 19, 1884,
delivered to R. R. Elder, artesian well contractor, as collateral security to
secure the payment to him of balance due on his contract. Nos. 37, 38, 39,
and 40 were signed after February 14, 1884, and were delivered to the
Colorado National Bank, presumably as collateral security to secure F. H.
James & Co. against loss under their contract to bore an artesian well. Sub-
sequently, conformably to the order of the commissioners' court dated

August 11, 1886, the 4 last-named bonds were restored to the custody of defendant's treasurer; and under the order of the commissioners' court of September 13, 1886, County Judge Thurmond went to St. Louis to sell said 4 bonds, for the purpose of purchasing with the proceeds "a complete outfit for boring an artesian well on the court-house square in said county for the court-house and county purposes." A part of the coupons in suit represent bonds numbered 36 to 40, inclusive.

10. The bonds admitted in evidence, from which the coupons in suit are detached are in the following form, pretermitting the numbers:

"No.            UNITED STATES OF AMERICA.            Dollars 1,000.
                "COURT-HOUSE COUPON BOND.
    "*Howard County.*                              *State of Texas.*

"Know all men by these presents, that the county of Howard, in the state of Texas, acknowledges itself indebted unto J. H. Milliken & Co. or bearer in the sum of one thousand dollars, lawful money of the United States of America, which sum the said county promises to pay for value received, at the banking-house of Donnell, Lawson & Simpson, in the city of New York, fifteen years from the date hereof, but redeemable at any time at the pleasure of said county, together with interest thereon from date at the rate of eight per centum per annum, payable annually on the 10th day of April in each year on the presentation and surrender of coupons hereto attached, as they severally become due and payable. This bond is issued in accordance with the provisions of an act of the legislature of the state of Texas entitled 'An act to authorize the county commissioner's court of the several counties of this state to issue bonds for the erection of a court-house, and to levy a tax to pay for the same,' approved February 11th, 1881. In testimony whereof the county commissioner's court of Howard county have caused to be hereto affixed the seal and the signature of the proper officers of said court at Big Springs, Texas, this 12th day of November, A. D. 1883.
                        "GEO. HOGG, County Judge, Howard County, Texas.
    "Countersigned:
        "J. M. WALKER, Clerk County Court, Howard County, Texas.
    { Seal of Commissioners' Court }
    { of Howard County, Texas.   }
    "Registered 22nd day of November, A. D. 1883.
        "F. W. HEYN, County Treasurer, Howard County, Texas."

11. The coupons in evidence, except as to numbers and dates of maturity, are similar in form, and are as follows:
"No.                                                    $80.00.
            THE COUNTY OF HOWARD, STATE OF TEXAS.

"Promises to pay bearer eighty dollars at the banking-house of Donnell, Lawson & Simpson, in the city of New York, being interest for one year on Bond No. ——.                          GEO. HOGG, County Judge.
    "J. M. WALKER, Clerk County Court."

12. The 40 bonds of the second issue were, pursuant to the fifth section of the act of 1881, signed by the county judge and countersigned by the county clerk, and registered by the county treasurer.

13. Milliken & Co. procured from B. G. Bidwell, Esq., attorney at law, his written opinion touching the validity of the bonds, of which the following is a copy:
                        "WEATHERFORD, TEXAS, Dec. 4th, 1883.

"*Mr. Sam H. Milliken*--DEAR SIR: I have examined the court-house bonds issued by Howard county, Tex., the orders of the court, and the act of

the legislature of the state of Texas, appr'd Feby. 11th, 1881, (chap. 9 of Acts of 1881.) I find that the orders of the county comrs.' court are regular, and in conformity with our law. The bonds, on their face, are regular, and conform to the orders of the court. These bonds are issued under an act of the legislature of Tex., entitled 'An act authorizing the county commissioners' court of the several counties in this state to issue bonds for the erection of a court-house, and to levy a tax to pay for the same,' approved Feby. 11th, 1881. This is the last act upon this subject, and is still in force. It provides as follows: 'That the county commissioners' court of any county which has no court-house at the county-seat is hereby authorized and empowered to issue the bonds of the said county, with interest coupons attached in such amount as may be necessary to erect a suitable building for a court-house; said bonds running not exceeding fifteen (15) years, and redeemable at the pleasure of the county, and bearing interest at a rate not exceeding eight per cent. per annum.' The act authorized the levy of a tax to meet the interest and create a sinking fund to pay the bonds. After carefully examining the constitution of Texas, the statutes thereof, the law, and the whole facts in reference to the issuance of the bonds, I gave it as my professional opinion that the said bonds are regularly and properly issued; they are in all respects legal, valid, and binding on the said county. I give you this opinion after carefully examining the whole question.

    [Signed]                                 "B. G. BIDWELL."

14. Bonds numbered 1 to 30, inclusive, with coupons attached, of the second issue, passed, by sale in due course of trade, to Nelson & Noel, bankers and brokers of St. Louis, and were by Nelson & Noel in open market sold to plaintiff, March 12, 1884, at the rate of 101 and interest; or, in the aggregate, for $31,100.

15. At the time of his purchase plaintiff knew nothing concerning the issuance of the bonds except what was disclosed upon their face. He was informed by Nelson & Noel that the bonds were "court-house bonds," and that they were good. Plaintiff knew of no defect in the bonds; knew nothing in regard to the assessed wealth of Howard county, and had no examination made of the Howard county records. When Nelson & Noel bought the bonds they had before them the opinion of B. G. Bidwell, but it is not shown that plaintiff ever saw it.

16. After plaintiff's purchase of the 30 bonds, coupons falling due April, 1884, April, 1885, April, 1886, April, 1887, were paid by defendant. But default was made as to the coupons of 1888, 1889, 1890, and 1891. As before stated, bond No. 1 was redeemed in 1886.

17. The following admission, in reference to bonds numbered 31 to 40, inclusive, is inserted as a part of the finding of facts: "It is admitted by defendant that bonds 31 to 35, both inclusive, were purchased by a citizen of the state of Missouri, under the same circumstances, and at the same time, that the bonds were purchased by Gov. Francis, and with only such knowledge as he had as to the validity or invalidity of the bonds purchased by him. The bonds numbered 36 to 40, both inclusive, were purchased by that citizen of Missouri at a later date, but under similar circumstances, and with only such knowledge as Gov. Francis had at the time he purchased the bonds bought by him. It is further agreed that coupons in this suit detached from bonds Nos. 31 to 40, both inclusive, were transferred to Gov. Francis before the bringing of this suit."

17½. It is a just inference arising from the evidence, and is so found as a fact, that the court-house was constructed by Milliken & Co. in accordance with the terms of their contract.

18. The tax-rolls of Howard county, "approved by county commissioners,

sitting as a board of equalization, July 5th, 1883," show that the property, real and personal, subject to taxation in Howard county in 1883, amounted to $863,011.38. The certificate of the comptroller of the state is to the same effect. A "recapitulation" of the tax-rolls of Howard county for the year 1883, shows the total value of property of the county subject to taxation for that year to be $863,011.38. The oath of the assessor and order of approval of tax-rolls by the county commissioners are thus certified by the comptroller of the state:

"*The State of Texas, County of Travis:* I, John D. McCall, comptroller of public accounts in and for the state of Texas, do hereby certify that the above and foregoing recapitulation is a true and correct copy of the recapitulation of the tax-rolls of Howard county, Texas, for the year 1883, as the same appears in the rolls of said county for said year, which are on file in this office. I further certify that the oath of the assessor, and order of approval of the commissioners' court are true and correct copies. Witness my hand and official seal at my office in the city of Austin, this 8th day of October, A. D. 1889.

[Signed]                                        "JNO. D. McCALL, Comptroller."

19. There is nothing in the record showing the taxable value of property in Howard county for any year other than 1883. On November 12, 1883, the tax-rolls were on record in the proper offices, and subject to the inspection of the public.

20. It is a proper inference, deducible from the evidence, and it is therefore stated as a fact, that there were no tax-rolls of Howard county for the year 1882, nor was a tax levied for that year.

21. Howard county regularly levied taxes to provide for the second issue of court-house bonds until 1891, and has accumulated from that tax a sum approximating $8,000. The interest which the county paid on the bonds up to 1888 was partially paid in funds transferred from the "road and bridge" funds, for which a tax of 15 cents on $100 was levied. The collection of taxes on account of the court-house and jail fund was insufficient to pay interest on the bonds, and nearly all the road and bridge fund was transferred for that purpose.

### CONSTITUTIONAL PROVISIONS AND STATUTES.

The following constitutional provisions, together with the act of February 11, 1881, were in force November 12, 1883, the date of the second series of bonds issued by the defendant:

"The construction of jails, court-houses, and bridges, and the establishment of county poor houses and farms, and the laying out, construction, and repairing of county roads, shall be provided for by general laws." Article 11, § 2, Const. 1876.

Section 7 of the same article:

"All counties and cities bordering on the coast of the Gulf of Mexico are hereby authorized, upon a vote of two-thirds of the tax-payers therein, (to be ascertained as may be provided by law,) to levy and collect such tax for construction of sea-walls, break-waters, or sanitary purposes as may be authorized by law, and may create a debt for such works, and issue bonds in evidence thereof. But no debt for any purpose shall ever be incurred in any manner by any city or county unless provision is made, at the time of creating the same, for levying and collecting a sufficient tax to pay the interest thereon, and provide at least two per cent. as a sinking fund; and the condemnation of the right of way for the erection of such work shall be fully provided for."

Section 9, art. 8, of the constitution of 1876, as amended in 1883, is as follows:

"The state tax on property, exclusive of the tax necessary to pay the public debt, and of the taxes provided for the benefit of public free schools, shall never exceed thirty-five cents on the one hundred dollars' valuation, and no county, city, or town shall levy more than twenty-five cents for city or county purposes, and not to exceed fifteen cents, for roads and bridges. on the one hundred dollars' valuation, except for the payment of debts incurred prior to the adoption of this amendment, and for the erection of public buildings, street, sewer, and other permanent improvements, not to exceed twenty-five cents on the one hundred dollars' valuation in any one year, and except as is in this constitution otherwise provided."

The amended article 8 was adopted by the people August 14, 1883, and proclamation duly made thereof by the governor, September 25, 1883.

The original section 9 of article 8, relied on by the plaintiff, provides:

"The state tax on property, exclusive of the tax necessary to pay the public debt, shall never exceed fifty cents on the one hundred dollars' valuation, and no county, city, or town shall levy more than one-half of said state tax, except for the payment of debts already incurred, and for the erection of public buildings, not to exceed fifty cents on the one hundred dollars in any one year, and except as in this constitution is otherwise provided."

The act of February 11, 1881, is as follows:

"An act authorizing the county commissioners' court of the several counties of this state to issue bonds for the erection of a court-house, and to levy a tax to pay for the same. Section 1. Be it enacted by the legislature of the state of Texas, that the county commissioners' court of any county which has no court-house at the county-seat is hereby authorized and empowered to issue the bonds of said county, with interest coupons attached, in such amount as may be necessary to erect a suitable building for a court-house; said bonds running not exceeding fifteen years, and redeemable at the pleasure of the county, and bearing interest at a rate not exceeding eight per cent. per annum. Sec. 2. The commissioners' court of the county shall levy an annual *ad valorem* tax on the property in said county, sufficient to pay the interest, and create a sinking fund for the redemption of said bonds, not to exceed one-fourth of one per cent. for any one year. Sec. 3. The county shall not issue a larger number of bonds than a tax of one-fourth of one per cent. annually will liquidate in ten years, and such bonds shall be sold only at their face or par value. Sec. 4. The interest on said bonds shall be paid annually on the tenth day of April, and they shall be registered, and an account kept by the county treasurer of the amount of principal and interest paid on each. Sec. 5. Said bonds shall be signed by the county judge, and countersigned by the county clerk, and registered by the county treasurer, before they are delivered. Sec. 6. The security and the protection and safe-keeping of the public records and archives of Robertson county make an imperative public necessity that the rule requiring the bill to be read on three several days be suspended, and it is so enacted, and this act shall take effect from and after the day of its passage. Approved February 11, A. D. 1881. Takes effect from passage." Gen. Laws 1881, pp. 5, 6.

*John H. Overall* and *J. E. Townsend*, for plaintiff.
*G. W. Walthall* and *S. H. Cowan*, for defendant.

MAXEY, District Judge, (*after stating the facts as above.*) 1. It is insisted by the plaintiff that the original section 9, art. 8, of the constitution of 1876, should apply to this case, upon the ground that the bonds of November 12, 1883, were issued in lieu of the bonds authorized by orders of the commissioners' court of May 14 and 29, 1883, which latter were canceled and destroyed. But it will be observed the plaintiff by his pleadings asserts no rights under the orders of the commissioners' court authorizing the first issue of bonds, and no reference is made in the petition to any contracts, transactions, or bonds issued antecedent to November 12th. On the contrary, the suit is for recovery upon interest coupons detached from bonds bearing date November 12, 1883. These bonds were registered November 22, 1883, and could not have been delivered to Milliken & Co., in exchange for those first issued, until after that date. The order of the commissioners' court, providing for levy of a tax to pay interest on the bonds and create a sinking fund, was passed November 12, 1883, and the bonds on their face purport to have been executed on that day. Plaintiff purchased, March 12, 1884, 30 of the bonds delivered to Milliken & Co., (Nos. 1 to 30,) and a third party the remainder of the 35, (Nos. 31 to 35,) at the same time. The 5 left (Nos. 35 to 40) to complete the issue of 40 bonds were not actually issued by the county until a later period. The amendment of section 9, art. 8, of the constitution, was adopted by the people in August, 1883. The purchaser of the bonds therefore bought with notice that they were issued subsequent to the last-mentioned date, and in obedience to constitutional provisions then in force. If Milliken & Co. were before the court asserting rights under their contract to construct the court-house, there would be force in the objection that subsequent amendments to the constitution could not be held to destroy or impair their rights under the pre-existing contract. But such is not the present case. The plaintiff is a mere purchaser of the bonds in open market, and suing for interest due upon the same. He claims no rights as assignee or otherwise under the contract with Milliken & Co., but merely as the holder of the bonds, and no reason is perceived why the amendment to section 9, art. 8, should not be applied as law in this case. The claims of Milliken & Co. growing out of their contract with the county cannot be here inquired into. See *Insurance Co.* v. *Middleport,* 124 U. S. 548, 8 Sup. Ct. Rep. 625; *Norton* v. *Dyersburg,* 127 U. S. 176, 8 Sup. Ct. Rep. 1111; *Buchanan* v. *Litchfield,* 102 U. S. 293. If plaintiff could rightfully claim the protection of the original section 9, art. 8, of the constitution, because it was in force June 18, 1883, when the commissioners' court ordered the delivery of $35,000 in bonds to Milliken & Co., then for a like reason he should be held to the situation in which Milliken & Co. were placed by the action of the court in other respects at that time. Going back to June 18th, we find no provision whatever was made for levying and collecting a tax to pay the interest on the bonds and provide a sinking fund; and it admits of serious question, in view of the imperative mandate of section 7, art. 11, of the constitution, whether the collection of bonds issued pursuant to the June order could, under any

circumstances, be enforced.  *Bank* v. *City of Terrell*, 78 Tex. 450, 14 S. W. Rep. 1003.  See, also, *City of Terrell* v. *Dessaint*, 71 Tex. 770, 9 S. W. Rep. 593.

2. The defendant attacks the validity of the entire issue of 40 bonds, because they were issued partly for jail and artesian well purposes; the county being, it is contended, without power to execute its negotiable bonds for the purposes specified.  Attention will be first directed to bonds numbered from 1 to 35, which it is claimed were issued partly to construct a jail, leaving bonds 36 to 40 for separate consideration.  The county had, November 12, 1883, no express authority, granted by the constitution and laws of the state, to issue negotiable bonds to build a jail.  And the question arises, did it possess implied power to issue bonds for such purpose?  In *Claiborne· Co.* v. *Brooks*, 111 U. S. 406, 407, 4 Sup. Ct. Rep. 489, it is said by the court:  .

"Our opinion is that mere political bodies, constituted as counties are, for the purpose of local police and administration, and having the power of levying taxes to defray all public charges created, whether they are or are not formally invested with corporate capacity, have no power or authority to make and utter commercial paper of any kind, unless such power is expressly conferred upon them by law, or clearly implied from some other power expressly given, which cannot be fairly exercised without it."

*Merrill* v. *Monticello*, 138 U. S. 673, 11 Sup. Ct. Rep. 441;  *Concord* v. *Robinson*, 121 U. S. 165, 7 Sup. Ct. Rep. 937.

"Even where there is authority," says the court, "to aid a railroad, and incur a debt in extending such aid, it is also settled that such power does not carry with it any authority to issue negotiable bonds, except subject to the restrictions and directions of the enabling act."  *Young* v. *Clarendon Tp.*, 132 U. S: 347, 10 Sup. Ct. Rep. 107;  *Merrill* v. *Monticello, supra; Daviess Co.* v. *Dickinson*, 117 U. S. 657, 6 Sup. Ct. Rep.· 897.

The question of the character and extent of the power possessed by a state political or municipal corporation is one of state policy, and the decisions of the supreme court of this state will be regarded as authoritative, touching the power of its counties to issue negotiable securities. Speaking for the supreme court, in *Claiborne Co.* v. *Brooks, supra*, Mr. Justice BRADLEY employs this language:

"It is undoubtedly a question of local policy with each state what shall be the extent and character of the powers which its various political and municipal organizations shall possess; and the settled decisions of its highest courts on this subject will be regarded as authoritative by the courts of the United States, for it is a question that relates to the internal constitution of the body politic of the state."

In *Merrill* v. *Monticello, supra*, Mr. Justice LAMAR says:

"In *Gause* v. *City of Clarksville*, 5 Dill. 165, the court, in an able discussion of· the inherent and incidental authority of municipal corporations, holds that whether the municipal corporation possesses the power to borrow money and to issue negotiable securities therefor depends upon a true construction of its charter and the legislation of the state applicable to it."

"It may be considered," says the supreme court, "settled law in this state that one of its counties cannot issue bonds without an act of the legislature conferring that power." *Nolan Co.* v. *State*, (Tex. Sup. Ct.) 17 S. W. Rep. 826; *Robertson* v. *Breedlove*, 61 Tex. 316. The case of *Nolan Co.* v. *State* is also authority for holding that counties in Texas were without power, under the act of February 11, 1881, to issue bonds for constructing jails. The plaintiff in this cause sues upon coupons detached from bonds issued under the same act, and pursuant to a contract executed by the county and the contractors, Milliken & Co., for the construction of a jail and a court-house. Both buildings were constructed by the contractors in consideration of the bonds. Hence, following the *Nolan County Case*, which is similar in all essential respects to the case now before the court, the bonds issued for the jail were unauthorized by law. But it does not result that they were void in the hands of innocent purchasers. Upon this point, the observations of the court in that case are especially pertinent and appropriate here:

"Although we hold that the commissioners' court of Nolan county exceeded its authority in issuing bonds to Martin, Burns & Johnson for the construction of a jail, it does not follow that they may not be a valid indebtedness, in part, at least, against the county. They are payable to bearer, and in all other respects they are regular upon their face. They recite that they were issued for the purpose of erecting a court-house for Nolan county, and in pursuance of the authority conferred by the act of February 11, 1881. They also purport to have been registered by the treasurer of the county. The state is admitted to be holder for value of the four bonds of this series, which are in part the foundation of this suit; and it is also admitted that at the time of their purchase its agents had no actual notice of any fact which impaired their validity. The county of Nolan had no court-house, and therefore the commissioners' court had power to issue bonds for the erection of such a structure, containing all the recitals necessary to show the authority for the creation of the debt. If a purchaser were bound to inquire into the existence of the fact which empowered the court to issue bonds to build a court-house, and to know that the county had no court-house, in view of the recitals upon the face of the obligations he was bound to look no further. He had the right to rely upon the truth of such recitals, and, having paid value for the bonds without actual knowledge of their illegality, the county would be estopped to set up that they were not issued for the purpose for which they purported to be issued. *Chambers Co.* v. *Clews*, 21 Wall. 321; *Wilson* v. *Salamanca*, 99 U. S. 504; *Marcy* v. *Oswego*, 92 U. S. 640; *Humboldt Tp.* v. *Long*, Id. 644; *Daviess Co.* v. *Huidekoper*, 98 U. S. 100. We conclude, therefore, that the four bonds issued to Martin, Burns & Johnson, now held by the state, are valid obligations against the county, unless that entire issue was in excess of the amount of indebtedness which the court was authorized by law to create."

For like reasons, bonds numbered 2 to 35, inclusive, held as they are by innocent purchasers, are valid obligations against Howard county, "unless that entire issue was in excess of the amount of indebtedness which the court was authorized by law to create."

3. What amount of negotiable bonds was Howard county authorized to issue on November 12, 1883, for the purpose of constructing a court-house? That it had power to issue bonds in some amount cannot be

questioned, as the first section of the act expressly confers authority to
issue bonds, "with interest coupons attached, in such amount as may be
necessary to erect a suitable building for a court-house." But the third
section, which must be construed with preceding sections of the act, con-
tains a limitation upon the power of the county as to the amount which
may be issued. The act under discussion was construed by the supreme
court of this state in *Russell* v. *Cage*, 66 Tex. 432, 433, 1 S. W. Rep.
270, and the court there says:

"The other question presented is whether a tax of one-fourth of one per
cent. levied annually for ten years upon $1,750,000 of property will liquidate
$27,000 of bonds bearing interest at the rate of eight per cent. per annum.
Act Feb. 11, 1881, § 3. The bonds may run for fifteen years, redeemable at
the pleasure of the county. They are not required to be paid in ten years,
but no more shall be issued than will—that is, may or can—be liquidated by
the given tax in the stated period. The third section of the act does not pro-
vide for the payment of the bonds, but limits the amount of bonded indebt-
edness authorized by the law. This cannot be such an amount as will be
paid in ten years, when the act expressly provides that the bonds may run for
fifteen years, but the amount is such as may be paid by the prescribed tax in
ten years. The county is to ascertain the limit upon its power to issue bonds
by solving the problem put in the third section. The result of that calcula-
tion depends upon the time and manner of applying the proceeds of the tax,
not actually in the future, but in the calculation. * * * The object of the
law was to fix a uniform and certain standard of authority, applicable to all
counties. This standard is gauged by the financial condition of the county.
The interest it has to pay depends upon its credit, and the amount of the debt
the county may incur depends directly on the interest borne by the bonds
and its taxable wealth. These are the given factors, from which to ascertain
the extent of the county power. There is no element of uncertainty. The
sum for which bonds may be issued is the sum which, together with interest
at the given rate, could be liquidated by ten annual stated payments."

It is said by the court in the *Nolan County Case* that "the question of
excess in the amount of indebtedness depends upon the construction of
the statute." And—

"It must be interpreted in the light of the constitutional provisions which
relate to the same subject-matter. In *Bank* v. *City of Terrell*, 78 Tex. 450,
14 S. W. Rep. 1003, section 9 of article 8 of the constitution, as amended in
1883, was construed; and it was held that the amount of indebtedness which
counties, towns, and cities were authorized to create for the erection of pub-
lic buildings, etc., was limited to 25 cents upon $100 worth of property, as
shown by the assessment rolls of the municipality. The word ' valuation,'
as used in the section, was held to mean the value as fixed by competent au-
thority for the purposes of taxation. The result of that decision is that gov-
erning bodies of municipal corporations are not empowered, when ascertain-
ing the amount of an indebtedness to be created, to determine for them-
selves the aggregate value of the property therein subject to taxation, but
are to be governed by the official rolls made out by the tax assessor."

It will thus be seen that section 9, art. 8, of the constitution, as
amended, does limit the creation of indebtedness by a county, and is not
intended, as plaintiff contends, "wholly to limit the amount of the as-
sessment." See, also, *Lake Co.* v. *Rollins*, 130 U. S. 662, 9 Sup. Ct.
Rep. 651. The amount of bonds that the defendant could lawfully issue

was such an amount as a tax of one-fourth of 1 per cent. annually would liquidate in 10 years. The 35 bonds issued to Milliken & Co. pursuant to the order of court of November 12, 1883, were delivered to them contemporaneously with their registration November 22, 1883, or soon thereafter, and at a time when the last official assessment—that of 1883, and the only one then made by the county—showed the amount of taxable property in the county to be $863,011.38. Adopting the rule prescribed by the supreme court in *Russell* v. *Cage, supra*, and reaffirmed in *Nolan Co.* v. *State, supra*, a tax of one-fourth of 1 per cent. upon this sum would pay in 10 years $14,982.77. To that extent the 35 bonds under consideration constituted an indebtedness which was within the power of the county to contract. The amount beyond $14,982.77, as measured by the constitution and laws of this state, was in excess of the defendant's power to issue for the purpose of building a court-house.

4. The question arises: Are those bonds, numbered 2 to 35, inclusive, void, as to the excess, in the hands of innocent purchasers for value, as the holders are clearly shown by the testimony to be? If tested by the ruling of the supreme court of this state in the two cases last cited, the conclusion is irresistible that, as to the excessive issue, the bonds are void,—void in their inception, and void in the hands of any subsequent holder for value without notice. Thus it is said:

"As to the excess over that sum, they were void. * * * That the purchasers of the bonds of a city must look to the official assessment in order to ascertain the extent of the council's authority to create a municipal indebtedness, and that as to an excessive issue they cannot claim to be innocent purchasers."

It is insisted by the plaintiff—as it was contended in *Russell* v. *Cage*, and *Nolan Co.* v. *State*—that the recitals in the bonds estopped the county from contesting their validity. The bonds involved in the present controversy contain the following recital:

"This bond is issued in accordance with the provisions of an act of the legislature of the state of Texas entitled ' An act to authorize the county commissioners' court of the several counties of this state to issue bonds for the erection of a court-house, and to levy a tax to pay for the same,' approved February 11th, 1881."

The recital is that the bond was issued in accordance with the act of the legislature. It does not purport to be issued pursuant to, or in accordance with, the constitution; nor is there anything in the recital showing that the taxable value of the property in Howard county, as shown by the assessment rolls, was sufficient to authorize the commissioners' court to issue the bonds which the county actually issued. Construing section 9, art. 8, of the constitution upon this point, the supreme court, in *Bank* v. *City of Terrell*, says:

"No *ad valorem* tax has ever been collected in this state otherwise than through carefully regulated assessments. It is not practicable, if it can be said to be possible, to arrive at correct taxable values through any other means than an assessment. We would be compelled to ignore common sense and reject all experience before we could hold that when the constitution imposed upon cities [and the same may be said of counties] the duty of ascertaining the val-

uation of their taxable property it contemplated that they should look to any other source for the information than their own assessment rolls, taken for the purpose alone of furnishing such information. We are unable to conclude that the constitution, while intending to so strictly limit the creation of a debt to a percentage on valuation, contemplates that a city council may disregard official assessments, and adopt, according to their pleasure, any other means or no means of ascertaining the required fact. * * * It is firmly settled by the highest authority that, when the law that limits the debt by valuation directs that the valuation shall be ascertained by an assessment, such assessment governs and cannot be overcome by any mere recitals that the fact is otherwise."

That the same principle is applicable to counties will be readily ascertained by reference to the *Nolan Co. Case.* Section 9, art. 8, of the constitution of this state, as amended, and also as the section originally stood, in effect commands that a county shall, in order to create a debt for erecting a court-house, take its latest assessment of property for taxes, and from that ascertain, as heretofore shown, what amount of indebtedness it may lawfully contract. With this understanding of the constitutional provision, it will be readily seen that this case is not governed by the principles announced by the court in *Marcy* v. *Oswego*, 92 U. S. 637; *Humboldt Tp.* v. *Long*, Id. 642; and others cited by counsel for plaintiff. But it is thought to be clearly controlled by the cases of *Lake Co.* v. *Graham*, 130 U. S. 675, 9 Sup. Ct. Rep. 654; *Dixon Co.* v. *Field*, 111 U. S. 83, 4 Sup. Ct. Rep. 315; and *Buchanan* v. *Litchfield*, 102 U. S. 278. See, also, *Sutliff* v. *Lake Co.*, 47 Fed. Rep. 106; *Insurance Co.* v. *Lyon Co.*, 44 Fed. Rep. 329. In the *Lake Co. Case*, where the recitals were much more comprehensive than in this case, Mr. Justice LAMAR, at pages 682, 683, 130 U. S., and pages 656, 657, 9 Sup. Ct. Rep., quotes from *Dixon Co.* v. *Field* the following language:

"If the fact necessary to the existence of the authority was by law to be ascertained, not officially by the officers charged with the execution of the power, but by reference to some express and definite record of a public character, then the true meaning of the law would be that the authority to act at all depends upon the actual objective existence of the requisite fact, as shown by the record, and not upon its ascertainment and determination by any one; and the consequence would necessarily follow that all persons claiming under the exercise of such a power might be put to proof of the fact made a condition of its lawfulness, notwithstanding any recitals in the instrument. The amount of the bonds issued was known. It is stated in the recital itself. It was $87,000. The holder of each bond was apprised of that fact. The amount of the assessed value of the taxable property in the county is not stated; but, *ex vi termini*, it was ascertainable in one way only, and that was by reference to the assessment itself,—a public record equally accessible to all intending purchasers of bonds, as well as to the county officers. This being known, the ratio between the two amounts was fixed by an arithmetical calculation. No recital involving the amount of the assessed taxable valuation of the property to be taxed for the payment of the bonds can take the place of the assessment itself, for it is the amount as fixed by reference to that record that is made by the constitution the standard for measuring the limit of the municipal power. Nothing in the way of inquiry, ascertainment, or determination as to that fact is submitted to the county officers. They are bound, it is true, to learn from the assessment what the limit upon their authority is, as

a necessary preliminary in the exercise of their functions and the performance of their duty: but the information is for themselves alone. All the world besides must have it from the same source, and for themselves. The fact, as it is recorded in the assessment itself, is extrinsic, and proves itself by inspection, and concludes all determinations that contradict it."

Proceeding, the justice further says:

"The question here is distinguishable from that in the cases relied on by counsel for defendant in error. In this case the standard of validity is created by the constitution. In that standard two factors are to be considered, —one the amount of assessed value, and the other the ratio between that assessed value and the debt proposed. These being exactions of the constitution itself, it is not within the power of the legislature to dispense with them, either directly or indirectly, by the creation of a ministerial commission whose finding shall be in lieu of the facts." Pages 683, 684, 130 U. S., and page 657, 9 Sup. Ct. Rep.

Howard county assessment rolls of 1883 were public records, made in obedience to the constitution and laws of the state. They were open to the inspection of the public, and they contained the amount of the taxable property of the county. Purchasers of the bonds were chargeable with notice of these records, and, had they been consulted, the discovery would have followed that a tax of one-fourth of 1 per cent., authorized by the constitution and the third section of the act of 1881, levied annually on property valued at $863,011.38, would liquidate in 10 years an indebtedness of only $14,982.77. The bonds in excess of that amount are void, and collection of the excess cannot be enforced against the county, even by a *bona fide* purchaser for value.

5. It remains to consider the validity of bonds numbered 36 to 40, inclusive. These bonds, on their face, purport to be court-house bonds, and bear date November 12, 1883, the same date as the issue of 35 already discussed. Defendant objects to these bonds because (1) they were issued to bore an artesian well, and (2) the county exhausted its authority to issue bonds when, by the order of commissioners' court of November 12, 1883, it authorized the issuance and delivery of 35 bonds to Milliken & Co. to erect a court-house; and hence the subsequent issue of 5 bonds was unlawful and void. If the county had authority to issue bonds 36 to 40, inclusive, at the time the order for their issuance was passed, the fact that they were sold and the proceeds used to sink an artesian well would not invalidate them in the hands of an innocent purchaser. That point has been already decided against defendant touching the bonds, which it maintains were issued to construct a jail, and requires no further thought. The second objection, however, is more serious. The commissioners' court, November 12, 1883, ordered "that there be issued for the purpose of erecting a suitable building for a court-house for said county of Howard * * * thirty-five coupon bonds of the said county, of the denomination of one thousand dollars each, payable to J. H. Milliken & Co. or bearer," etc. No other bonds were then ordered to be issued, and Milliken & Co. were not entitled to any others, or anything else, under their construction contract. An additional order of November 12, 1883, was passed, authorizing the levy

of a tax of one-fourth of 1 per cent. "to pay the interest and create a sinking fund for the redemption of said bonds necessary to erect a suitable building for a court-house," as authorized by the act of 1881. It was not until February 14, 1884, the order was passed "that the balance of five thousand dollars court-house bonds may issue, in accordance with law, to any one who may agree to take same at their face or par value, and may be subject to the disposition of Geo. Hogg, county judge, or his successors in office." August 19, 1884,—about five months after the order authorizing the destruction and cancellation of the first and erroneous issue of 40 bonds,—an order was made by the commissioners' court that bond 36 be "turned over to R. R. Elder, artesian well contractor, as collateral security," etc. On March 1, 1886, it was ordered by the court "that A. D. Walker deposit said bonds Nos. 37, 38, 39, and 40 in Colorado National Bank, in accordance with terms of aforesaid contract,"—presumably a contract with James & Co. for boring an artesian well. These four bonds were subsequently withdrawn from the bank, conformably to the order of August 11, 1886, and remained in the custody of the county treasurer until County Judge Thurmond negotiated them in St. Louis, pursuant to the order of September 13, 1886. Bonds numbered 37, 38, 39, and 40, together with bond 36, were purchased by a citizen of St. Louis, after March 12, 1884, for value, and with only such knowledge of their validity or invalidity as plaintiff had at the time of his purchase of bonds numbered from 1 to 30. The court is of opinion that these 5 bonds are absolutely void, on the ground that the county had no power or authority to issue them. The power to issue bonds for the erection of a court-house was exhausted when the 35 bonds were issued and delivered to Milliken & Co.; and thereafter the county was without lawful authority to issue additional bonds, apparently for court-house purposes, but really and in fact intended and used for the purpose of boring an artesian well. *Daviess Co.* v. *Dickinson, supra.* Granted the power, under such circumstances, to issue bonds, purporting on their face to be court-house bonds, the authority would be susceptible of indefinite expansion; and under the pretense of lawful right a county would be enabled to flood the country with negotiable securities, binding upon the people. Such a doctrine is inconsistent with reason, and, it is believed, finds no support in the principles asserted by text-writers, or as enunciated by judicial tribunals. My conclusion, therefore, is that bonds numbered 36, 37, 38, 39, and 40 are void, and hence not enforceable.

6. It has been shown that bonds numbered 1 to 35, inclusive, are in part valid and partly void. The question now arises, is the county liable for the amount of indebtedness within the restricted limit? The supreme court of this state replies in the affirmative. *Bank* v. *City of Terrell, supra; Daviess Co.* v. *Dickinson, supra; Insurance Co.* v. *Lyon Co., supra.* The supreme court of Iowa holds the same view, and, in *McPherson* v. *Foster,* 43 Iowa, 72, 73, says:

"As we have seen, the constitutional inhibition operates upon the indebtedness, not upon the form of the debt. The district may become indebted to

the amount of $2,057.50 by bond. If the debt exceeds that amount, it is void as to the excess, because of the inhibition upon the power of the district to exceed the limit; and the bonds as to the same excess are void because of the non-existence of a valid debt therefor. But this restriction does not extend to the sum of $2,057.50 for which the district had power to issue its bonds. That sum is a valid debt. The bonds, to that extent, are valid. It is no unusual thing for instruments of this character to be partly valid and partly invalid. So far as they secure a lawful debt, they are valid. So far as the debt is unlawful, they are invalid. * * * It appears that the bonds all bear the same date, and were issued, though at different times, as a part of one transaction. They were intended as security for a debt of $15,000, which was attempted to be contracted in building the school-house. It cannot be said that in justice invalidity should attach to certain particular bonds, while others, to the amount for which the district could lawfully contract indebtedness, should be held valid. Each bond, being but a part of the whole debt, must partake alike of invalidity and validity; it must be partly valid and partly invalid. The whole alleged debt is $15,000. Of this sum $2,057.50 is valid. Each bond will be valid to the extent it represents a portion of the debt lawfully contracted. Such a sum is the proportion of the amount of the bond as $2,057.50 bears to $15,000; that is, $\frac{2,057.5}{15,000.0}$ of the principal of each bond is valid and collectible. The interest on each bond is determined by the same rule, or calculated upon the amount of each bond held to be valid."

Howard county could lawfully issue, November 12, 1883, bonds to the amount of $14,982.77. It did in fact issue bonds, partly valid and partly invalid, aggregating $35,000. Bonds to the extent of its power to issue—$14,982.77—became a valid indebtedness against the county, and enforceable by suit. Bonds in excess of that limit or amount are invalid and uncollectible. The 35 bonds were all issued and delivered at the same time to Milliken & Co., and they were subsequently bought at the same time by plaintiff and another citizen of St. Louis. None, therefore, have priority over the others, and the amount of valid debt should be equally distributed among them all. According to the rule laid down by the supreme court of Iowa, each one of the 35 bonds of $1,000 issued represents a valid indebtedness of $428, and each coupon of $80 a valid debt of $34.24. The suit embraces of these coupons, partly valid and partly invalid, 34 due April 10, 1888; 34 due April 10, 1889; 29 due April 10, 1890; and 29 due April 10, 1891. There is then due the plaintiff on the coupons the following amounts:

|  |  |  |  |  |  |
|---|---|---|---|---|---|
| (1) Coupons due 1888, principal, | - | - | $1,164 16 | | |
| Interest to April 10, 1892, | - | - | 372 53 | | |
| | | | | $1,536 69 | |
| (2) Coupons due 1889, principal, | - | - | $1,164 16 | | |
| Interest to April 10, 1892, | - | - | 279 39 | | |
| | | | | 1,443 55 | |
| (3) Coupons due 1890, principal, | - | - | $992 96 | | |
| Interest to April 10, 1892, | - | - | 158 87 | | |
| | | | | 1,151 83 | |
| (4) Coupons due 1891, principal, | - | - | $992 96 | | |
| Interest to April 10, 1892, | - | - | 79 43 | | |
| | | | | 1,072 39 | |
| Total, | - | - | - | - | $5,204 46 |

Judgment should be rendered for the foregoing amount, with 6 per cent. interest thereon from date, (Gen. Laws 1891, p. 87; Const. Amend. adopted Aug., 1891,) if, indeed, it be proper to enter judgment in favor of plaintiff for any amount in this suit at law. This question presents a serious difficulty. The supreme court of Iowa, in *McPherson* v. *Foster, supra,* and Judge SHIRAS, in *Insurance Co.* v. *Lyon Co., supra,* declined to enter judgment; the latter basing his refusal on the ground that the rights and equities of the bondholders could only be adjusted by a proper proceeding in equity, with all the parties before the court. Discussing the question, he observes:

"It is argued that the bonds would be valid until the amount needed to refund the enforceable debt had been reached, and that it will be presumed that the bonds were sold in the order of their number. Such a presumption cannot be indulged in under the facts of this case. To settle the equities and rights of the bondholders against the county, and their rights as between themselves, would seem to require the institution of a suit in equity. In this action at law between one owner of part of the bonds and the county, it is beyond the power of the court to hear and determine the question of the order in which the series of bonds were sold, or the application of the proceeds realized from the sales thereof, and whether the facts are such that a certain number of the bonds can be held valid at law, or whether it should not be held that each owner of a bond is equitably entitled to demand his share of the total sum which may be adjudged to be collectible from the county."

Touching this point, the supreme court of this state says:

"Neither the pleadings nor the proof in the record before us present the case so as to authorize a judgment of the nature indicated by us as being proper. Strictly speaking, no judgment other than the one from which the appeal was taken could have been rendered. We think it right, however, to give the appellee an opportunity amend his pleadings, and have the issues so presented as to show what proportion of the debts sued on he may be entitled to recover, under the rules that we here announce." *Bank* v. *City of Terrell, supra.*

See, also, *Daviess Co.* v. *Dickinson, supra.*

This court fully concurs in what is said in the cases cited. But the rulings in those cases were predicated upon the particular facts of each case. While in this suit the court entertains serious doubts as to the propriety of entering judgment in behalf of plaintiff, yet, after giving the question careful consideration, I am impressed with the conviction that such a judgment would be warranted by both the pleadings and proofs; and perceiving no insuperable objection, in a case of this kind, to the rendition of a judgment in a suit at law, my conclusion is that plaintiff should recover the amount found due, with legal interest and costs of suit. If he be not permitted to recover all he claims, he should at least have judgment for the amount to which he is lawfully entitled.

Ordered accordingly.