## CONCORD v. ROBINSON.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

Argued March 24, 1887. — Decided April 4, 1887.

A grant to a municipal corporation of power to appropriate moneys in aid of the construction of a railroad, accompanied by a provision directing the levy and collection of taxes to meet such appropriation, and prescribing no other mode of payment, does not authorize the issuing of negotiable bonds in payment of such appropriation.

The power given by the act of March 24, 1869, of the legislature of Illinois, relating to the Chicago, Danville and Vincennes Railroad, to townships, towns, and cities, which had voted to contribute aid in the construction of said road, to borrow money and issue bonds in payment of such contributions, if not acted upon prior to July 2, 1870, was withdrawn by the constitution of Illinois of 1870, and could not, thereafter, be exercised.

Subscriptions and donations in aid of railroads, voted by municipal corporations of Illinois, prior to July 2, 1870, such vote being authorized by laws in force when it was taken, could be completed after that date, according to the conditions attached to the vote, or upon terms that did not increase the public burdens, notwithstanding the provision in the constitution of 1870, that no municipality " shall ever become subscriber to the capital stock of any railroad or private corporation, or make donation to, or loan its credit in aid of, such corporation."

THIS was an action at law to recover on coupons attached to negotiable bonds issued by the plaintiff in error. A jury was

waived at the trial. Judgment for plaintiff. Defendant sued out this writ of error. The case is stated in the opinion of the court.

Mr. *Henry Decker* for plaintiff in error. Mr. *Lewis H. Bisbee* and Mr. *John P. Ahrens* were with him on the brief.

Mr. *George A. Sanders* for defendant in error.

Mr. Justice Harlan delivered the opinion of the court.

This is an action upon negotiable coupon bonds signed by the supervisor and clerk of the town of Concord, a municipal corporation existing under the township organization law of Illinois. They were executed in 1871. Each bond purports, upon its face, to have been "issued under and by virtue of a law of the State of Illinois to authorize cities, towns or townships within certain limits to appropriate moneys and levy a tax to aid the construction of the Chicago, Danville and Vincennes Railroad," and pledges the faith of the township for the payment of the principal and interest. The act here referred to was passed March 7, 1867. 1 Private Laws Ill. 1867, p. 842. It authorizes all incorporated towns and cities, and towns acting under the township organization law, within certain territorial limits, (which includes the town of Concord,) to appropriate such sum of money as they deem proper to the Chicago, Danville and Vincennes Railroad Company to aid in the construction of its road, "to be paid to said company as soon as the track of said road shall have been located and constructed through said city, town, or township, respectively;" provided, the appropriation is first sustained at the polls by a majority of the electors of the municipality. The act authorized and *required* the authorities of said townships, towns, or cities, respectively, "to levy and collect a tax, and make such provisions as may be necessary and proper for the prompt payment" of the appropriation. It neither expressly nor by implication invested the municipal corporations, embraced by its provisions, with the power to issue commercial paper in payment of an appropriation so voted. We held in

*Claiborne County* v. *Brooks,* 111 U. S. 400, 406, — which was decided after the judgment below was rendered, — that "mere political bodies, constituted as counties, are for the purpose of local police and administration, and having the power of levying taxes to pay all public charges created, . . . have no power or authority to make and utter commercial paper of any kind, unless such power is expressly conferred upon them by law, or clearly implied from some power expressly given, which cannot be fairly exercised without it." No such implication arises from the grant to a municipal corporation of power to appropriate moneys in aid of the construction of a railroad, accompanied by a provision directing the levy and collection of taxes to meet such appropriation, and prescribing no other mode of payment. *Wells* v. *Supervisors,* 102 U. S. 625, 631; 632; *Ogden* v. *County of Daviess,* 102 U. S. 634, 639. The provision in the act of 1867 that the money should be paid as soon as the road was located and constructed through the city, town, or township voting the appropriation, is inconsistent with the idea that such appropriation could be met, in the first instance, by negotiable bonds which might pass into the hands of *bona fide* holders for value, and become binding, whether the road was, or not, so located or constructed.

The clause requiring such provisions to be made as are necessary and proper for the prompt payment of the appropriation has reference only to the collection and application of taxes levied to meet the appropriation.

For these reasons the court erred in holding that the validity of the bonds was sustained by the act of March 7, 1867.

2. The suggestion, that the bonds were authorized by the act of February 26, 1869, 3 Private Laws Ill. 1869, p. 355, entitled "An act to legalize certain aids heretofore voted and granted to aid in the construction of the Chicago, Danville and Vincennes Railroad," is without force. That act, by its very terms, has reference only to aids voted and granted prior to its passage. The aid in the present case was voted subsequently.

3. Nor, in our judgment, can the bonds be sustained as valid obligations of the town by the provisions of the act of

March 24, 1869, 3 Private Laws Ill. 1869, p. 356, entitled "An act to enable towns, townships, cities, or counties along the line of the Chicago, Danville and Vincennes Railroad to contribute toward the construction of said railroad." The first section of that act authorizes the several *counties* through which the road shall pass, by action of the board of supervisors, or by action of the county court in counties not acting under township organization, to make appropriations or loan their credit in such sums and upon such terms and conditions as they deem proper, to aid in the construction of such road; provided, the appropriation is first voted by the electors. The second section provides that "the legal voters of any town, township or city along the line of said railroad, whether said railroad shall run into or through said town, township, or city, or not, may, by a majority of the legal voters voting at any election held for the purpose, make appropriations or donations to aid in the construction of said railroad, and the proper authorities *shall levy and collect taxes*, in the manner that other taxes are levied and collected, to promptly meet any obligations assumed under and by virtue of this act."

The fourth section provides that "the authorities of any township, town, or city — such township, town, or city having voted to contribute aid in the construction of said railroad — may borrow money to promptly meet such contribution, and issue bonds of such township, town, or city, . . . . and shall have power to levy and collect such taxes as may be necessary to pay accruing interest or pay the principal sum." This last section, it is contended, gave the supervisor and town clerk of Concord authority to issue negotiable bonds in payment of the appropriation or contribution voted by the township of Concord. In this view we do not concur.

The constitution of Illinois adopted in 1870 provides that "no county, city, township, or other municipality shall ever become subscriber to the capital stock of any railroad or private corporation, or make donation to or loan its credit in aid of such corporation: *Provided, however,* That the adoption of this article shall not be construed as affecting the right of any such municipality to make such subscriptions [or donations.

*Chicago & Iowa Railroad* v. *Pinkney*, 74 Ill. 277; *Fairfield* v. *County of Gallatin*, 100 U. S. 47, 50], where the same have been authorized under existing laws, by a vote of the people of such municipalities prior to such adoption." The corporate authorities of Concord — the electors of the township — voted, November 20, 1869, in favor of levying a tax for the purpose of raising the sum of $25,000 in two years, " to be donated to the Vincennes, Danville and Chicago Railroad Company [meaning the Chicago, Danville and Vincennes Railroad Company], provided said company run said railroad through the villages of Concord and Sheldon." The road was never constructed into or through either of said villages. It did not touch either township; nor did the electors of Concord township ever vote upon the subject of issuing bonds in payment of the donation so voted. If, under these circumstances, the authorities of that township ever had power, under the act of March 24, 1869, to issue bonds to meet that donation, that power was withdrawn by the constitution of 1870, before the bonds in suit were issued. The section of that instrument relating to municipal subscriptions to railroad corporations went into operation July 2, 1870. *Louisville* v. *Savings Bank*, 104 U. S. 469; *Schall* v. *Bowman*, 62 Ill. 321. Since that day no municipal corporation of Illinois has possessed authority to subscribe to the stock of a railroad or private corporation, or to make donations to or loan its credit to them, except that a subscription or donation, lawfully voted by the people before the adoption of that section, could be completed upon the terms and conditions approved by the electors. There is no saving of the right of such corporation to loan their credit to railroad corporations, where such loan of credit was not embraced in a vote previously taken, under existing laws, and which was favorable to a subscription of stock or a donation. The township of Concord voted a donation merely, to be met by taxation within the period of two years, and to be paid if the railroad was constructed through the villages of Concord and Sheldon, and not a donation to be met by interest-bearing bonds covering a period of ten years. Some question is made as to whether the township did not, by the vote at the special

election of June 30, 1870, lawfully rescind the vote of November 20, 1869. Upon that question we express no opinion; and it may be assumed, for the purposes of this case, that the election of June 30, 1870, did not affect the legal right of the railroad company to claim the donation voted November 20, 1869, upon the terms and conditions annexed thereto by the electors. But that is the utmost the company could have claimed. It certainly could not, prior to the adoption of the constitution of 1870, have demanded, as of right, that bonds be issued; for the people did not vote for issuing bonds, and the act of March 24, 1869, did not make it imperative upon the township authorities to issue bonds to meet a donation. It only declared that they "*may* borrow money . . . and issue bonds," and in that way pay the contribution which had been voted. The constitution took away all power to impose upon the township any greater burdens than the people had by vote lawfully assumed under existing statutes. These bonds were issued in 1871. Purchasers were bound to know that neither the act of 1867, under which they were issued, nor the act of February 26, 1869, conferred authority to issue them. If they purchased them in the belief that the recital in the bonds of the act of 1867 was a mere mistake, and, that the act of March 24, 1869, gave the requisite authority, they were informed by the latter act that the township authorities were not obliged to issue them, and, by the constitution of 1870, that the power to do so was taken away. They were bound to know that the power of the township, after July 2, 1870, was restricted by the constitution to a completion of such subscription or donation as had been lawfully voted before that date; if not upon the precise terms and conditions attached thereto by the vote of the people, upon such terms as did not increase the burden. The bonds contain no recital that they are issued pursuant to a vote of the people had before the adoption of the constitution of 1870, and there is, consequently, no pretence to say that the township is estopped to deny the authority of its supervisor and clerk to execute them. *Crow* v. *Oxford*, 119 U. S. 215.

If it be suggested that the railroad company acquired a

right, by the vote of November 20, 1869, which the constitution of 1870 could not affect, the answer is that the company, in its acceptance, June 20, 1870, of the offer of township aid, stated that it would construct the road pursuant "to the terms and conditions voted by said town," which did not include the issuing of negotiable bonds. Besides, the constitution saved whatever rights· were acquired by the company under that vote; for, it left untouched the authority of the township to complete the donation to the company according to the terms upon which it was voted. It only withdrew from the township the power to make new subscriptions or donations, or to loan its credit to a railroad or private corporation, a power which the township had not agreed, prior to July 2, 1870, by vote or otherwise, to exert in behalf of the railroad company. In the interpretation we have placed · upon the foregoing section of the state constitution, we are sustained by the judgment of the Supreme Court of Illinois in *Middleport* v. *Ætna Life Ins. Co.*, 82 Ill. 562, 568. See also *Aspinwall* v. *County of Daviess*, 22 How. ·364; *Wadsworth* v. *Supervisors*, 102 U. S. 534.

Upon the whole case, and without suggesting other grounds upon which the conclusion we have reached may rest, we are of opinion that the bonds in suit are not valid obligations of the town, notwithstanding the plaintiff purchased them before maturity, without notice of any defence thereto.

*The judgment is reversed, with directions to enter a judgment, on the special finding of facts, for the defendant; and it is so ordered.*