[Civil No. 1391.    Filed May 16, 1914.]

[140 Pac. 821.]

BOARD OF SUPERVISORS OF YAVAPAI COUNTY, STATE OF ARIZONA, WILLIAM STEPHENS, ALONZO MASON and H. W. HEAP, Members of Said Board, and R. T. BELCHER, Clerk Thereof, Appellants, v. JOHN J. HAWKINS, Appellee.

1. COUNTIES—ISSUANCE OF BONDS—STATUTORY AUTHORITY.—A county may not issue bonds unless the power is specifically conferred, or necessarily implied from the law governing the powers of counties.

2. COUNTIES—BONDS—"FUNDING" OF DEBT.—Where bonds of a county are issued as the original evidence of indebtedness contracted by it, the bonds are not a funding of a debt as ordinarily understood.

3. COUNTIES—ERECTION OF PUBLIC BUILDINGS—BONDS—STATUTORY AU-
THORITY.—Under Civil Code of 1913, paragraphs 5266–5285, govern-
ing county and municipal indebtedness, and authorizing by vote of
electors an indebtedness in excess of four per cent of the value of
the property in the county, providing that, if the county shall desire
to fund an indebtedness by the issuance of bonds, bonds may be
issued for public buildings, a county whose indebtedness does not
exceed four per cent of the assessed valuation of the property
thereof may issue, if authorized at an election called for the pur-
pose, bonds for the construction of a courthouse where the former
indebtedness and the indebtedness created by the bonds will not in
the aggregate exceed four per cent of the assessed valuation.

APPEAL from a judgment of the Superior Court of the
County of Yavapai. Frank O. Smith, Judge. Reversed and
remanded with directions.

The facts are stated in the opinion.

Mr. G. P. Bullard, Attorney General, Mr. Leslie C. Hardy,
Assistant Attorney General, Mr. P. W. O'Sullivan, County
Attorney, and Mr. J. H. Morgan, Assistant County Attorney,
for Appellants.

Mr. H. H. Linney and Mr. Richard Lamson, for Appellee.

Mr. Daniel E. Parks, of Counsel, *Amicus Curiae.*

ROSS, J.—This action was commenced by the appellee as
plaintiff, January 23, 1914, against the board of supervisors
of Yavapai county for the purpose of restraining such board
from calling an election to be held upon the question of
authorizing the county to create an indebtedness by an issue
of the bonds of the county to the amount of $250,000 for
the purpose of raising a fund for the construction and fur-
nishing of a county courthouse. Upon the face of the com-
plaint it appears that the present indebtedness of Yavapai
county does not exceed four per centum of the assessed valua-
tion of the property of the county, and if such bonds are
issued, then the entire indebtedness, including the present
indebtedness, together with the indebtedness created by the
issue of said bonds, in the aggregate would not exceed four
per centum of the assessed valuation of the property of the

county. It is not shown by the pleadings, nor is it contended by the appellee, that the method pursued for obtaining the assent of the taxpayers and electors is not in all respects in conformity to the provision of chapter 2, title 52, Civil Code of 1913, providing for the creation of indebtedness by counties and the issue of bonds therefor. It is alleged that if said election is held such election will cost the county $3,000, and the election thus held will be void, and any bonds issued pursuant to the result of such election will be wholly void, for the reason such election is not authorized by law and the county cannot thereby be authorized by such election to create an indebtedness of the county and evidence the same by issuing bonds of the county, except when the indebtedness thereby created will exceed four per centum of the assessed valuation of property of the county. As a taxpayer, the plaintiff prays that the board be enjoined from ordering or calling such election. The defendants demurred to the complaint upon the grounds that the facts stated are insufficient to constitute a cause of action. The court overruled the demurrer, and, defendants declining to answer further, judgment was rendered for plaintiff in accordance with the prayer of his complaint. From the judgment defendants have appealed and assign as error the ruling of the court upon the demurrer, and in rendering judgment for the plaintiff.

As stated in appellants' brief: The general rule is that a county may not issue bonds unless the power is specifically conferred by law, or unless the power is necessarily implied from the law relating to the powers of counties. The general statement of the law is conceded by appellee to be correct; indeed, it may not be controverted, for such a proposition finds support perhaps without dissent in the adjudicated cases. See the following cases: *Francis* v. *Howard County* (C. C.), 50 Fed. 44–56; *Police Jury of Parish* v. *Britton,* 82 U. S. (15 Wall.) 566, 21 L. Ed. 251; *Claibourne County* v. *Brooks,* 111 U. S. 400, 28 L. Ed. 470, 4 Sup. Ct. Rep. 489; *Merrill* v. *Monticello,* 138 U. S. 673, 34 L. Ed. 1069, 11 Sup. Ct. Rep. 441; *Concord* v. *Robinson,* 121 U. S. 165, 30 L. Ed. 885, 7 Sup. Ct. Rep. 937; *Duke* v. *Williamsburg County,* 21 S. C. 414; *Colburn* v. *Chattanooga Western Ry. Co.,* 94 Tenn. (10 Pick.) 43, 28 S. W. 298; *Robertson* v. *Breedlove,* 61 Tex. 316;

*Nolan County* v. *State,* 83 Tex. 182, 17 S. W. 823; *Ball* v. *Presidio County,* 88 Tex. 60, 29 S. W. 1042.

This power, then, as affecting the question before us, is to be determined by a review of chapter 2 of title 52, Civil Code of 1913, to ascertain if the authority of the county to create an indebtedness and issue its bonds as evidence thereof is specifically granted by the law, or is necessarily implied therefrom. If such power is specifically granted by the law, or is necessarily implied therefrom, then the judgment of the lower court is erroneous and must be disaffirmed. A solution of the question depends upon the construction given to the chapter named.

The history of chapter 2, title 52, *supra,* affords light in its construction. It appears first as chapter 29, first session of the legislature (Laws 1912, c. 29), and was entitled "An act enabling counties, school districts, cities, towns, and other municipal corporation to become indebted in an amount exceeding four per centum of the taxable property therein, . . . " and consisted of nineteen sections, eighteen of which were devoted to providing the *modus operandi* by which such corporations when indebted in excess of four per centum might issue bonds or other evidence of indebtedness, increasing that indebtedness, and one of the essentials prescribed is that an election must first be held to obtain the approval of the qualified property taxpayers within such corporation. The last section (19) bears upon the same subject matter, but by its terms is expressly made to apply to counties, school districts, cities, towns and other municipal corporations whose indebtedness does not exceed four per centum. Section 19, as passed by the first session, reads as follows: "Nothing in this act contained shall be construed to prevent any county, school district, city, town, or other municipal corporation from creating an indebtedness not exceeding four per centum of the value of the taxable property in such county, school district, city, town, or other municipal corporation; provided, that if such county, school district, city, town, or other municipal corporation shall desire to fund such indebtedness by the issuance of bonds therefor, said bonds shall be issued in all respects in conformity with the provisions of this act; and, provided, further, that it will not be necessary to hold the election required to be held therein."

If the proceeding of the board of supervisors of Yavapai county depended for its legality upon section 19, as passed by the first session, the power sought to be exercised possibly would be involved in doubt. Whether the expression "creating an indebtedness," as used in this section, was intended by the legislature to mean a floating indebtedness arising in the ordinary transactions of the municipality, or whether it was used in the sense in which it is employed in sections 3 and 6 (Civil Code 1913, secs. 5268, 5271) to mean a determination to incur the proposed liability, is unimportant here. We speak of funding floating or outstanding debts by issuing bonds in lieu thereof; but when bonds are issued as the first and original evidence of an indebtedness contracted it is not "a funding of the debt," as that expression is ordinarily used. When it is considered that chapter 2 throughout treats of the creation of indebtedness by municipalities and the method and manner of evidencing such indebtedness as it is incurred, it may be that it was intended that the expression "that if such county . . . shall desire to fund such indebtedness by the issuance of bonds therefor" should be construed to mean that bonds could be issued as the original or first evidence of the liability incurred and not the funding of a floating or outstanding debt. This view finds support from the fact that the legislature has provided for a loan commission authorized and empowered to fund and refund the funded and outstanding indebtedness of counties and other municipalities. Title 52, c. 1, Civil Code 1913.

But authority for the proposed action of the board of supervisors of Yavapai county is not left to chapter 2, title 52, as passed by the first session. The third special session of the legislature amended section 19 (Civil Code 1913, sec. 5285) by adding thereto another proviso. The amendment is as follows: "Provided, that bonds may be issued under the provisions of this chapter, for the construction and reconstruction of roads, bridges and highways; for the construction of public buildings, and for any other lawful or necessary purpose. The enumeration of the above-mentioned purposes shall not be deemed as restrictive of the right to issue bonds for other purposes, but rather in furtherance thereof. In case any county in the state of Arizona shall have called or held an election for the issuance of bonds, as herein provided,

prior to the becoming effective of the provisions of this section, said election shall be and is hereby deemed to have been called and held pursuant to the provisions of this chapter, and the bonds that may be hereafter issued pursuant to such election, shall be in all respects as valid and legal as though the provisions of this section had been in force at the time of said election.''

No plainer or more liberal language could be employed. There is a general grant of right and power to issue bonds (not to fund indebtedness) under the provisions of this chapter. The last proviso, in effect, adopts and makes applicable to municipalities whose indebtedness does not exceed four per centum, all the preceding provisions of the chapter affecting or concerning municipalities whose indebtedness does exceed four per centum of the taxable property therein. This proviso is not only the last in place, but last in time of enactment and in direct, positive and unambiguous language empowers the municipalities named to issue bonds ''for the construction of public buildings and for other lawful and necessary purpose'' under the provisions of this chapter. It places its finger, so to speak, directly upon ''public buildings,'' and having said that the funds for the erection of such building may be raised by issuing bonds under the provisions of chapter 2, applying the maxim ''*Expressio unius est exclusio alterius*,'' it may be doubted if funds for that purpose can be raised in any other manner.

The construction and reconstruction of roads, bridges and highways and the construction of public buildings generally involve large expenditures, and the legislature has very properly lodged the power in the legally qualified taxpayers to say by their vote whether they care to assume the obligations before they are contracted. The ultimate burden of discharging the indebtedness falls on the taxpayer, and that is sufficient reason why his assent should be obtained directly, if possible, before the debt is contracted. We cannot but think that the last proviso was inserted by the legislature for the express purpose of securing the personal assent of the taxpayer by his vote before bonds could be issued against his property for the construction of roads, bridges, highways and public buildings. The last sentence of section 19, *Id.* (Civil Code 1913, sec. 5283), while a ''validating'' statute, is not

confined to any class of counties, but reaches all the counties of the state. If, at the time it was enacted, doubt existed as to the legality of an election in counties owing less than four per centum of their taxable property, it was the evident purpose to set at rest such doubt as to elections already held or pending by the curative statute, and by the same token it must be that the legislature intended to expunge any doubt as to the legality of future elections held "for the issuance of bonds, as herein provided" "in . . . any county in the state of Arizona," for it is said, if "prior to the becoming effective of the provisions of this section" an election has been called or held as provided by chapter 2, the bonds issued thereunder shall "be as valid and legal as though the provisions of this section had been in force at the time of said election." By this language the legislature asserts its belief (and therefore its intention) that had section 5285, *Id.*, in its completeness existed all the time, no validating legislation would have been necessary to legalize an election held in any county of the state for the purpose of issuing bonds. The curative feature of section 5285 was not necessary for counties whose indebtedness exceeded the four per centum limit, if they had "held an election for the issuance of bonds, as herein provided." The validating or curative statute had in view the other class of counties, those owing less than four per centum of their taxable property, and from its language we are informed that the legislature intended that since section 5285 in its completed form was enacted any county in the state was authorized to issue bonds under the provisions of chapter 2, as amended by the third special session.

It follows, from what we have said, that, in municipalities where the indebtedness is less than four per centum, additional indebtedness may be created for the construction of public buildings in the manner and by compliance with the provisions of chapter 2, title 52, Civil Code 1913. In other words, the procedure provided in said chapter whenever it is attempted to increase the aggregate amount of the indebtedness of the municipalities named, so as to exceed four per centum of the taxable property therein, must be followed where it is attempted to increase the indebtedness of municipalities whose indebtedness is less than four per centum.

Judgment reversed and cause remanded, with direction to sustain the demurrer and dismiss the complaint.

FRANKLIN, C. J., concurs.

CUNNINGHAM, J.—I concur in the result and order made by the majority of the court. I will state my reasons separately, which are as follows:

Chapter 2 of title 52, Civil Code of 1913, prescribes the form and manner by which a county or other designated municipality may authorize the creation of a bonded or funded indebtedness in excess of four per cent of the valuation of the taxable property within such municipality. The plan or system by which the indebtedness must be authorized and created and evidenced by an election to authorize its creation, the form of and sale of the bonds is prescribed in detail by paragraphs 5266 to 5284 of chapter 2, title 52, both inclusive. The municipality affected, which is already indebted to the constitutional limit of four per centum of the value of the taxable property, may in the manner prescribed, by pledging future taxes, raise a fund to meet a useful, desired or necessary purpose. Paragraph 5285, Civil Code of 1913, being the closing paragraph of chapter 2, is expressive of the legislative construction in some measure placed upon the chapter. It provides: "Nothing in this chapter contained shall be construed to prevent any county, school district, city, town or other municipal corporation from creating an indebtedness not exceeding four per centum of the value of the taxable property in such county, school district, city, town, or other municipal corporation; provided, that if such county, school district, city, town, or other municipal corporation shall desire to fund such indebtedness by the issuance of bonds therefor, said bonds shall be issued in all respects in conformity with the provisions of this chapter, and, provided, further, that it will not be necessary to hold the election required to be held herein; provided, that bonds may be issued under the provisions of this chapter, for the construction and reconstruction of roads, bridges and highways; for the construction of public buildings, and for any other lawful or necessary purpose. . . ." Chapter 2, then, in the intention of the legislature, shall not be construed to prevent the creation of any legal

indebtedness, which with the existing indebtedness will in the aggregate amount to a sum not in excess of four per centum of the value of the taxable property of such municipality affected. However, if such municipality desires to incur such indebtedness by the issuance of bonds therefor, then such bonds "shall be issued in all respects in conformity with the provisions of this chapter."

Under the general powers of the board of supervisors given in paragraph 2418, Civil Code of 1913, the board, by subdivision 9 of said paragraph, is given power to erect and furnish a courthouse, jail, hospital, and such other buildings as may be necessary. Paragraph 5285, Civil Code of 1913, as construed by the legislature, preserves these general powers of the boards of supervisors in all respects to create a public indebtedness, not in excess of four per cent of the taxable property within their county, when the indebtedness created is of the ordinary class, payable by county warrant on demands examined and allowed by the board. The board must determine the necessity of creating the indebtedness; but if the question of the creation of such indebtedness is favorably determined, and the county or other municipality shall desire that such indebtedness shall become a bonded indebtedness when created, then the bonds shall be issued in all respects in conformity with the provisions of chapter 2 of title 52; provided that it will not be necessary to hold the election required to be held by paragraph 5267. There exists no question of the authority of the board of supervisors to create the indebtedness of the county of Yavapai in question, the present indebtedness together with the indebtedness proposed in the aggregate not exceeding four per centum of the value of the taxable property; but how shall the desire of the county to create such indebtedness by the issuance of bonds be determined? If the board of supervisors as representatives of the county order, of its own volition, the issuance of such bonds, then the order may be considered an expression of the desire of the county, in that respect, speaking through its governing board. The governing board has not made the order in the present case, but it has passed an ordinance upon the subject requiring an expression of the desire of the county upon the question of the issuance of such bonds to be ascertained through an election to be held upon the presenta-

tion to the board of an initiative petition signed by not less than fifteen per cent of the qualified electors of the county. No general law upon this subject controlling, subdivision 23 of paragraph 2418, Civil Code of Arizona of 1913, empowering boards of supervisors "to do and perform all other acts and things which may be necessary to the full discharge of the duties of the chief legislative authority of the county government, . . ." would, with section 8 of part 1, article 4, state Constitution, give the board full power to enact such ordinance for such purpose. The authority to pass the ordinance and issue the order for the election for the purpose mentioned is not questioned except upon the grounds of the power of the board to create the indebtedness in the form of bonds. I have held that such power exists when bonds are desired by the county for that purpose. The purpose of the election in question is to determine if the county desires to fund the indebtedness by the issuance of bonds for the purpose of erecting and furnishing a courthouse for the county. If the election is held as provided by the county ordinance, and the result is in favor of the issuance of the bonds, and the board orders the indebtedness created in conformity with the provisions of chapter 2, title 52, then the liability, when the bonds are issued and sold, is contracted in pursuance to law and is valid under paragraph 2431, Civil Code of Arizona of 1913.

The facts stated in the complaint are not sufficient to constitute a cause of action, for the reason the facts show that the board of supervisors are acting fully within the law, as expressed by the legislative power, and by an ordinance of their own.

For these reasons I concur in the order made.