[Civil No. 1789.   Filed February 2, 1920.]

[187 Pac. 265.]

JOHN DOAN, Appellant, v. BOARD OF SUPER-
VISORS OF YUMA COUNTY, ARIZONA,
F. E. ELLIOTT, J. P. COREY and J. C.
POWERS, Members of the Board of Supervisors
of Yuma County, Arizona, Appellees.

1. COUNTIES—CANNOT ISSUE BONDS UNLESS POWER IS CONFERRED
SPECIFICALLY OR BY IMPLICATION.—A county may not issue bonds
unless the power is specifically conferred by law or is necessarily
implied from the law relating to the powers of counties.

2. EVIDENCE—EXORBITANT INTEREST PAID BY COUNTIES ON FLOATING
INDEBTEDNESS MATTER OF COMMON KNOWLEDGE.—It is a matter
of common knowledge that many of the counties in Arizona are
paying an exorbitant rate of interest upon their outstanding or
floating indebtedness.

3. COUNTIES—RIGHT TO ISSUE BONDS TO FUND FLOATING INDEBTEDNESS.
Under Civil Code of 1913, paragraph 5285, a county whose total
indebtedness, including the bonds proposed to be issued, is less than
four per cent of the valuation of taxable property as ascertained
by the last assessment, can issue bonds to fund its outstanding or
floating indebtedness; such bonds not increasing the obligations of
the county.

4. COUNTIES—HAVE POWER TO ISSUE BONDS TO FUND FLOATING IN-
DEBTEDNESS WITHOUT CONSENT OF TAXPAYERS SECURED AT ELECTION.
Under Civil Code of 1913, paragraph 5285, a county whose total
indebtedness, including the proposed bonds, is less than four per
cent of the valuation of its taxable property as ascertained by last
assessment has power through its board of supervisors to issue and
sell bonds to fund its floating indebtedness without first obtaining
the assent of qualified voters who are property taxpayers expressed
at an election called for the purpose.

APPEAL from a judgment of the Superior Court
of the County of Yuma.   Fred L. Ingraham, Judge.
Affirmed.

Mr. Earl C. Hall, for Appellant.

Mr. W. F. Timmons, County Attorney, for Ap-
pellees.

BAKER, J.—This was a case brought by the plaintiff, who was a resident and taxpayer of Yuma county, against the defendants, who constitute the board of supervisors of the county, to restrain said defendants from issuing the bonds of the county for the purpose of funding the outstanding or floating indebtedness of the county.

The case was submitted to the lower court for decision upon an agreed statement of facts, from which it appears, so far as the same is essential to a proper determination of the case in this court, that the defendants, as members of the board of supervisors of the county, in accordance with the terms of a previous resolution adopted by the board, intend to and are about to issue and sell the bonds of the county, in the sum of $100,000, payable twenty years after the date of issue, with interest at the rate of five and one-half per cent per annum, to D. E. Dunn & Co., for par value, with accrued interest, and $1,500 premium, for the purpose of funding the outstanding and floating indebtedness of the county, without first submitting the question of the issuance of said bonds to the qualified voters who are property taxpayers in the county; that the total indebtedness of the county, including that to be evidenced by said bonds, does not exceed four per cent of the valuation of the taxable property in the county, as ascertained by the last assessment for state and county purposes.

The court determined the case in favor of the county, and refused to issue an injunction restraining the defendants from issuing and selling the bonds, and thereupon this appeal was taken from such judgment.

Two questions are presented by the record: First. Can the county whose total indebtedness, including the bonds proposed to be issued, which is less than four per cent of the valuation of the tax-

able property in the county, ascertained by the last assessment, issue the bonds of the county for the purpose of funding its outstanding or floating indebtedness? Second. Can the board of supervisors of the county issue said bonds, without first submitting the question to the qualified voters who are property taxpayers in the county?

. The first question seems easy of solution. Beyond question the general rule is that a county may not issue bonds unless the power is specifically conferred by law or unless the power is necessarily implied from the law relating to the powers of counties. 28 Cyc. 1575; *Board of Supervisors* v. *Hawkins,* 16 Ariz. 16, 140 Pac. 821. We must therefore necessarily look to the statute to ascertain if the county of Yuma possesses the power to issue the bonds in question. Paragraph 5285, title 52, Civil Code of 1913, provides as follows:

"Nothing in this chapter contained shall be construed to prevent any county, school district, city, town, or other municipal corporation from creating an indebtedness not exceeding four per centum of the value of the taxable property in such county, school district, city, town, or other municipal corporation; provided, that if such county, school district, city, town, or other municipal corporation shall desire to fund such indebtedness by the issuance of bonds therefor, said bonds shall be issued in all respects in conformity with the provisions of this chapter, and, provided, further, that it will not be necessary to hold the election required to be held herein. . . . "

By the express terms of this provision each and every organized county in this state may create an indebtedness on account of the general current or running expenses of the county not exceeding four per cent of the valuation of the taxable property in the county, and may issue bonds to fund such indebtedness. Such seems to be the clear purpose and intent of the legislative enactment. We construe the

expression "such indebtedness" as referring to indebtedness authorized to be created for general county purposes, and which, in fact, has been incurred in the past. The statute evidently recognizes that it is good business policy in the administration of county finances, to fund the outstanding or floating indebtedness of counties, which is generally evidenced by warrants, by the issuance of bonds or other obligations in the place of and in exchange of such indebtedness, and to do this is common practice in the fiscal management of counties. It is a matter of common knowledge that many of the counties in this state are paying an exorbitant rate of interest upon their outstanding or floating indebtedness, and one of the objects of the statute was to provide for funding such indebtedness at a lower rate of interest and obtaining more favorable provisions for partial payments of the principal. Bonds issued to take the place of such indebtedness will in no manner increase the obligations or indebtedness of the county. The transaction will simply operate as an exchange of one evidence of indebtedness for another without increasing the old debt or creating a new one. 1 Abbott on Municipal Corporations, § 190; *Veatch* v. *City of Moscow,* 18 Idaho, 313, 21 Ann. Cas. 1332, 109 Pac. 722; *Opinion of the Justices,* 81 Me. 602, 18 Atl. 291; *Hotchkiss* v. *Marion,* 12 Mont. 218, 29 Pac. 821; *City of Los Angeles* v. *Teed,* 112 Cal. 319, 44 Pac. 580.

This brings us to the second question. The clause contained in the section of the statute cited that, " . . . if such county . . . shall desire to fund such indebtedness by the issuance of bonds therefor, . . . provided, further, that it will not be necessary to hold the election required to be held herein, . . . " is in the nature of an exception. The expression "the election required to be held herein" evidently refers to

the election required in the earlier part of the chapter to be held in all cases where a county desires to increase its indebtedness over and above four per cent of the valuation of its taxable property. As we have just said, the funding of the outstanding or floating indebtedness of the county in no manner increases the liability or indebtedness of the county. If the total indebtedness of the county is below four per cent of the valuation of its taxable property, and it be deemed advisable to issue bonds to fund all or any portion of its outstanding or floating indebtedness, the case will fall within the exception contained in the statute in reference to an election, and the question of issuing the funding bonds need not be submitted to the voters of the county.

*Board of Supervisors* v. *Hawkins, supra,* is a case wholly and entirely different from the present case. In that case the county was about to issue bonds for the purpose of building a courthouse and thereby creating a new debt of the county. The case was predicated upon a different provision in the statute, to wit:

" . . . That bonds may be issued under the provisions of this chapter for the construction and reconstruction of roads, bridges and highways; for the construction of public buildings, and for any other lawful or necessary purpose. . . . "

. The exception dispensing with the necessity of submitting the question of issuing the bonds to the voters does not apply to that provision. In no sense could the issuance of bonds for the purpose of building a courthouse be considered as the funding of an existing debt. Any expression in *Board of Supervisors* v. *Hawkins* contrary to the view herein expressed in reference to the funding of the valid, outstanding or floating indebtedness of a county may be disregarded and considered overruled.

We conclude that Yuma county, acting by and through the board of supervisors, was and is vested with the power, under the law, to issue and sell the bonds in question without first obtaining the assent of the qualified voters who are property taxpayers in the county, expressed at an election called for that purpose.

The judgment of the lower court is therefore affirmed.

CUNNINGHAM, C. J., and ROSS, J., concur.