.236 P.2d 361

**JONES v. SANTA CRUZ COUNTY et al.**

No. 5270.

Supreme Court of Arizona.

Oct. 8, 1951.

Nasib Karam and James V. Robins, of Nogales, for appellant.

Frank J. Barry, Jr., former County Atty., Tucson, Ruffo Espinosa, County Atty., and William S. Reed, Deputy County Atty., Nogales, for appellees.

Evans, Hull, Kitchel & Jenckes, of Phoenix, for amicus curiae.

STANFORD, Justice.

This is an action by plaintiff, appellant herein, against the defendants, members and clerk of the Board of Supervisors of Santa Cruz County, who are appellees herein. After the complaint was filed and later amended defendants moved to dismiss the amended complaint on the ground that it failed to state a claim upon which relief may be granted. The court thereupon granted the motion, ordering that the complaint be dismissed and entered judgment thereon. From that judgment and order, this appeal is now taken.

On November 30, 1948, an election was held in Santa Cruz county, at which time the residents of the county voted to authorize the issue of certain bonds with which to defray in part the cost of purchasing grounds for a "county hospital" and the erection of the hospital thereon.

On May 2, 1949, defendants met and adopted the following resolution: "It is declared to be the policy of the Board of Supervisors of Santa Cruz County, that the County Hospital to be built from the proceeds of the bonds which will be sold on May 2, 1949, will be built for all classes of patients, *principally patients who are able to pay and will pay for their hospitalization and hospital service and that such hospital service is being provided for paying patients from all parts of Santa Cruz County including the 'Patagonia Area' and the Eastern part of the County.*" (Emphasis supplied)

It is undisputed that the said meeting was regular in all respects, that all the members of the said board were present and that the above quoted resolution has never been changed, amended or repealed.

Upon the filing of plaintiff's complaint, a temporary restraining order was issued enjoining defendants from taking further action on the said bond issue. In his complaint, plaintiff prayed for a permanent injunction, prohibiting defendants from proceeding further with the said county bond issue, and for a declaratory judgment adjudging defendants to be without power to use the proceeds of the bond issue for the construction of a hospital which is to be, as declared by the defendants, princi-

pally for the use of patients who are able to pay and will pay for their hospitalization.

Plaintiff makes three assignments of error, which allege in substance that the trial court erred in granting defendants' motion to dismiss in that it appears from the amended complaint that plaintiff is an interested party and entitled to the relief prayed for and that unless defendants are enjoined from issuing the said bonds, they will wrongfully use the public funds obtained thereby, to wit: for the purpose of building a hospital, to be used principally for paying patients, contrary to the provisions of Article 3, Chapter 17, A.C.A. 1939, enumerating the powers of the boards of supervisors.

Section 17-309, A.C.A.1939, in part reads as follows:

"The board of supervisors, under such limitations and restrictions as are prescribed by law, may:

*   *   *   *   *   *

"5. Provide for the care and maintenance of the indigent, sick and the dependent poor of the county; erect and maintain homes and hospitals therefor; provide in their discretion a farm in connection with the county hospital, and make regulations for working the same;

*   *   *   *   *   *

"8. Cause to be erected and furnished a court-house, jail, hospital and such other buildings as necessary, and construct and establish a branch jail, when necessary, at a point distant from the county seat".

We are here confronted with two main questions: (1) Does the Board of Supervisors have the power to provide maintenance and care for the sick of the county who are not dependent poor nor indigents; and (2) if they possess no such power, does the adoption of the above quoted resolution, expressing their intent to wrongfully use the proceeds of the said bond issue amount to a usurpation of power rendering them without authority to proceed with the bond issue?

■ Our first consideration will be directed to the question of the authority of the Board of Supervisors in connection with the erection and maintenance of a county hospital. Much space and effort is expended in the briefs discussing the grammatical structure of section 17-309, supra. Plaintiff contends that this section gives the county no power to construct and maintain hospitals for care of residents other than those who are indigents or dependent poor. Defendants maintain that the phrase "indigent, sick and the dependent poor of the county" refers to three distinct types of people, namely those county residents who are indigents, those who are sick and those who are the dependent poor. In our opinion a lengthy dissertation upon proper punctuation and sentence structure would in no manner contribute to the proper determination of the issues

herein. Our attention will instead be directed to the section as a whole. We think it ridiculous to assume that the counties make a practice, or could make a practice of providing free medical aid and hospital service for *all* of its residents regardless of their financial status, nor can we in our most elastic imagination feel that the legislature entertained such an intention in granting the boards of supervisors powers under the above quoted section. We are of course committed to the view that the strict rules of technical grammar will be ignored where they are not consistent with the general meaning and object of a statute. Murphy v. State, 65 Ariz. 338, 181 P.2d 336. We think it is evidenced clearly by the history of the Act that the legislative intent at the time of the adoption of section 17–309, supra, was that the medical care furnished by the counties should be restricted to those residents who are indigents or dependent poor. Section 2418(5), Revised Statutes 1913, Arizona Civil Code, contained provisions similar to section 17–309(5), supra, and the wording there appeared: "To provide for the care and maintenance of the indigent sick, or the otherwise dependent poor of the county". It is clear and unquestionable that the application of county assistance was by this section limited to indigents and dependent poor. A careful study of the changes made in this section in the development of the present section 17–309, supra, shows no specific legislative intent to make such a drastic change in the meaning of the section. Such minor changes in word placing and punctuation must be regarded as changes in form and not in substance of the law, unless a legislative intent to change the substance clearly appears. Peterson v. Central Arizona Light & Power Co., 56 Ariz. 231, 107 P.2d 205. We are unable to find such intent. Also from section 17–349, A.C.A.1939, providing for possible admission of paying patients to the county hospitals, we quote: " * * * The admission of a paying patient shall not be to the inconvenience of any indigent patient * * *." We hold therefore that the provisions of section 17–309, supra, provide for county assistance only where the recipients are indigents or dependent poor.

The next question for determination pertains to an analysis of the substance and effect of the above quoted resolution as passed by defendants and its effect upon the prospective bond issue. It is plaintiff's contention that defendants, having declared an invalid purpose for the use of the proceeds of the bond issue, are now without power to proceed with the bond issue. Defendants maintain that their resolution was merely a statement of policy and of intended use of the hospital which in no manner affected their primary right and duty under the bond election mandate to erect a county hospital. They further contend that plaintiff therefore has no cause of action unless and until the

hospital is erected and actually used principally for paying patients to the inconvenience of the county indigent patients. As pointed out above, the election at which the bond issue was authorized was regular in all respects and it thereupon became the duty of the defendants, as county officials, to carry out the will of the people. The duty remains unchanged, i. e., to construct and maintain a "county hospital", which, as discussed above, is to be used primarily for the care of the indigents and dependent poor of the county. The only method of attaining that end is, as provided for by the said election, the issue of county bonds. In the face of this we are here confronted with nothing more than a resolution, adopted by a majority of a three-man board. To suppose that a mere statement of intention issued by a group of county officials could sidetrack a bond issue carried by an election of the people, only because that intention was contrary to the will of the people, would allow obstinate public officials to easily thwart any such public spirited movement toward progress. It is of course well-settled law that an injunction will not issue to restrain a lawful act. 43 C.J.S., Injunctions, § 19, and cases cited therein. Consequently an injunction may not issue to enjoin the bond issue which is not only lawful under the code, but was also duly authorized by an election. The resolution passed by defendants, being contrary to the express provisions of law relating to county hospitals, is therefore entirely void and without effect and defendants are without power to act accordingly. It remains the duty of the defendants to proceed with the bond issue and use the proceeds in the manner prescribed.

 We hold therefore that the complaint failed to state a claim upon which relief could be granted and that the lower court was correct in dismissing the same and entering judgment thereon.

Judgment affirmed.

UDALL, C. J., and PHELPS, DE CONCINI and LA PRADE, JJ., concur.