**244 P.2d 351**

**ACKERMAN v. BOYD et al.**

**No. 5658.**

Supreme Court of Arizona.

May 5, 1952.

Willis R. Dees, of Tucson, for appellant and cross-appellee.

Robert Morrison, County Atty., and Morris K. Udall, Chief Deputy County Atty., of Tucson, for appellees and cross-appellants.

La PRADE, Justice.

This is an appeal and a cross-appeal from a judgment on the pleadings in a declaratory judgment action brought by a taxpayer to test the legality of a proposed bond issue by the Pima County Board of Supervisors.

On November 5, 1951, the Board of Supervisors passed a Resolution of Intention reciting that the bonded indebtedness of the county did not exceed 4% of its assessed valuation and that the issuance of $3,000,-000 in bonds would not exceed that limit; that the county needed a new courthouse and county hospital, and thereby announced its intention to issue $2,500,000 in bonds to obtain land and construct a new courthouse, and $500,000 to construct a county hospital. It was the announced intention of the supervisors to issue the bonds under authority of Section 17-337 et seq., A.C.A. 1939, *without* calling a bond election. On January 29, 1952, plaintiff (appellant here), as a taxpayer and owner of certain real property which the county proposed to condemn as a site for the buildings, filed an action asking judgment declaring that the board of supervisors has no right to issue bonds for that purpose without the assent of a majority of real property taxpayers given at an election held for that purpose, and praying that an injunction issue restraining it from proceeding further with the bond issue. Defendants answered, admitting all allegations of fact but alleging that they were and are entitled to issue the bonds without an election. Defendants also counterclaimed, asking a declaratory judgment upholding the legality of the proposed bond issue. Plaintiff's reply admitted all allegations of fact in the counterclaim but denied defendants' right to relief by virtue of their failure to comply with Section 10-601 et seq., A.C.A. 1939. Both parties then moved

for judgment on the pleadings, whereupon the trial court rendered judgment:

1. Upholding the right of the Board of Supervisors to issue bonds and construct the courthouse under Section 17–337 et seq., without holding a bond election.

2. Denying the Board of Supervisors the right to issue bonds for the construction of a county hospital under the purported authority of Section 17–337, upon the theory that a county hospital is not a "court-house, jail or other county building" as contemplated by said Section 17–337.

From this judgment the plaintiff-appellant appeals contending that *neither* court-house nor hospital can be built, when bonds are proposed to be issued for that purpose, without a bond election, and defendant-appellees appeal contending that *both* court-house and hospital can be erected and financed without a bond election.

Plaintiff assigns as error the partial granting of defendants' motion for judgment on the pleadings and holding that the board of supervisors may without a bond election issue bonds for construction of a courthouse, for the reason that Section 10–601 et seq. A.C.A. 1939 requires an affirmative vote by the real property taxpayers of the county before such bonds may be issued.

The basic issue involved is whether a county of the state of Arizona may borrow money to be evidenced by its bonds and with which moneys it proposes to construct a county courthouse and a county hospital without the assent of a majority of the real property taxpayers of the county, voting at such election, when the aggregate indebtedness of the county does not exceed four per centum of the taxable property in the county to be ascertained by the last assessment for state and county purposes.

Our statutes apparently set up two separate and distinct procedures relating to the circumstances and conditions that must exist as a condition precedent to the issuance of bonds and providing the modus operandi for their issuance and the terms and conditions of the bonds. These separate procedures are to be found in chapters 10 and 17 of the Arizona Code Annotated 1939. Chapter 10 is entitled "Public Finances"; article 6 of said chapter, Section 10–601 et seq., is entitled "County, Municipal, and School District Indebtedness". Chapter 17 is entitled "Counties and County Officers". Article 3 of Chapter 17, Section 17–301 et seq., is entitled "Board of Supervisors". The comparable antecedent legislation for both chapters was in the Arizona Civil Code for 1913 and the Revised Code of 1928. In construing the antecedent provisions of Chapter 10, our court in the case of Board of Supervisors of Yavapai County v. Hawkins, 1914, 16 Ariz. 16, 140 P. 821, held that if a county desired to increase its indebtedness by a bond issue that this question had to be submitted to the qualified property taxpayers regardless of the fact that the proposed increase in

indebtedness would not exceed the four per centum limitation. In Doan v. Board of Supervisors of Yuma County, 1920, 21 Ariz. 240, 187 P. 265, this court, in again interpreting the provisions of what is now Chapter 10, held that a county having a total indebtedness of less than four per centum of the valuation of its taxable property had power to issue and sell bonds to *fund* floating indebtedness without first obtaining the assent of qualified property taxpayers.

■ It is the position of the county that since the proposed indebtedness, when added to its existing indebtedness, does not exceed four per centum of the assessable property of the county, it was authorized to proceed with the construction of a court-house and county hospital and secure the money with which to pay for same by the issuance of bonds and was not required to submit the question to a vote and obtain the assent of a majority of the real property taxpayers in the county voting at such election. Its chief reliance is Section 17–337, A.C.A. 1939, which reads as follows:

"When the aggregate indebtedness of any county does not exceed four [4] per centum on the value of the taxable property within such county, ascertained by the last assessment for state and county taxes, and such county has not a suitable court-house, jail or other county buildings, the board of supervisors may erect the same and for that purpose and for purchasing the

grounds therefor, may issue on behalf of such county, bonds not exceeding in the aggregate an amount which if added to the then existing indebtedness of the county does not exceed four [4] per cent of the assessable property of the county. The board shall first adopt and enter a resolution of intention to issue such bonds and erect such buildings, stating the public need therefor, the estimated cost and the amount of the bonds to be issued."

It will be noted that this section is silent on the question of an election. The county also relies upon Article 9, section 8 of the Arizona Constitution, the pertinent part of which reads as follows:

"No county, city, town, school district, or other municipal corporation shall for any purpose become indebted in any manner to an amount exceeding four per centum of the taxable property in such county, city, town, school district, or other municipal corporation, without the assent of a majority of the property taxpayers, who must also in all respects be qualified electors, therein voting at an election provided by law to be held for that purpose, the value of the taxable property therein to be ascertained by the last assessment for state and county purposes, previous to incurring such indebtedness; * * *."

It is the position of the county that this constitutional provision authorizes and

sanctions the enactment of Section 17–337, and that this provision clearly contemplated the issuance of bonds up to four per centum without an election. Plaintiff-appellant takes the position that under no circumstances can a county issue its bonds, except funding or refunding bonds, without an election thereon to be approved by a majority of the qualified real property taxpayers voting at the election. It relies upon the decision of this court in the Hawkins case, supra, and further calls to the attention of the court the provisions of Article 7, section 13 of the Constitution, which provides as follows:

"Questions upon bond issues or special assessments shall be submitted to the vote of real property taxpayers, who shall also in all respects be qualified electors of this state, and of the political subdivision thereof affected by such question."

It is interesting and significant to note that this constitutional provision was not referred to by the court in either the Hawkins or Doan cases. An examination of the original briefs submitted by counsel in these cases contains no reference to or mention of this constitutional provision. Counsel for the county seek to avoid the seemingly mandatory language of this constitutional provision by pointing out that it is contained in an Article entitled "Suffrage and Elections" and that the various provisions of the Article refer generally to elections, qualification of voters and similar matters. It is contended that this section merely designates *who* shall vote on bond issues when a bond election is properly called and that in determining *when* a bond issue must be called reference must be had to Article 9, section 8 of the Constitution, supra, as implemented by Section 17–337. With this contention we cannot agree. The meaning of this constitutional provision, Art. 7, Sec. 13, was squarely before this court in the case of Southern Pac. Co. v. Maricopa County, 1942, 59 Ariz. 369, 129 P.2d 312, 313, wherein it was the contention of counsel that

"* * * unquestionably it was the intention of the framers of our constitution to prevent the imposition of bond issues as distinguished from *other indebtedness* upon property without the vote of a majority of the real property taxpayers in the district affected." (Emphasis supplied.)

As to this, the court said:

"* * * It would seem this contention is right and we agree with it."

We again agree with this interpretation. We believe that this interpretation is manifestly the correct one in view of the wording of the constitutional provision to the effect that *questions upon bond issues shall* be submitted to the vote of the real property taxpayers of the political subdivision thereof affected by such question. Such an interpretation commends itself when it is considered that bond issues, in most instances, involve the borrowing of large sums of money, the repayment of which is ordinarily projected over a considerable

number of years into the future. Undoubtedly the framers of our constitution had in mind by the enactment of this provision that the creation of indebtednes to be evidenced by bonds payable not in the immediate future but rather over a long period of years should only be with the consent of the majority of those whose property was to be obligated.

Counsel argue that since Article 9, section 8 of the Constitution only requires an election when it is proposed to exceed the four per centum limitation, no election is necessary. Such an inference, if permissible, vanishes in the face of the mandatory language of Article 7, section 13. Both constitutional provisions must be read together and harmonized. They do not present a question for reconciliation. These two identical sections were thoroughly considered in Southern Pac. Co. v. Pima County, 1931, 38 Ariz. 11, 296 P. 533, and in Southern Pac. Co. v. Maricopa County, 1942, supra, and though the identical question here presented was not before the court in either case, one cannot help but be convinced that the court was understandingly aware that these two constitutional provisions not only suggested but commanded that a question upon a bond issue, as distinguished from other indebtedness, was within the exclusive determination of the real property taxpayers. The board of supervisors, as a preliminary matter may submit such questions, but not determine them.

We shall now consider that portion of the judgment to the effect that the board of supervisors was without authority to erect a county hospital and issue its bonds for that. purpose where it was attempting to proceed under authority of Section 17–337. The trial court was of the opinion that when this section authorized the board to erect a "court-house, jail or other county buildings" and issue bonds therefor, that the words "or other county buildings" should be given a restrictive meaning in that they had been preceded by a specific enumeration, to-wit: "court-house, jail". It was reasoned that when our legislature saw fit to specifically enumerate courthouses and jails, it must have intended to limit the kind of buildings that the board could erect with bond money to buildings of a similar character and that to hold that the words "or other county buildings" were intended to apply to county buildings of every kind and character would be to hold that the word "other" was not restrictive in meaning and hence that the legislature had no reason for referring expressly to courthouses and jails. By applying the maxim of ejusdem generis, it is possible in some instances to give to the word "other" the restrictive meaning given by the trial court. But it must be remembered that it is the duty of the courts in all instances to give effect to the full intent of the legislative body in enacting legislation. The so-called doctrine of ejusdem generis is merely a rule or aid in statutory

construction resorted to when words have a doubtful meaning. Arizona Superior Mining Co. v. Anderson, 33 Ariz. 64, 262 P. 489. We do not believe that the words, as here used, are of doubtful meaning or leave in doubt the true intent of the legislature. We reach this conclusion by determining that we are not confined in interpreting them to the context of this particular section. Section 17–309, A.C.A. 1939, enumerates the powers of the board of supervisors and contains some 30 subsections. By subsection 5, the board is authorized to "erect and maintain homes and *hospitals*" for the injured, sick and dependent poor of the county. (Emphasis supplied.) See Jones v. Santa Cruz County, 72 Ariz. 374, 236 P.2d 361. By subsection 6, it is authorized to "provide suitable rooms for county purposes". In subsection 8, it is authorized to "cause to be erected and furnished a court-house, jail, *hospital* and such other buildings as necessary, and construct and establish a branch jail, when necessary, at a point distant from the county seat". (Emphasis supplied.) Considering these sections together, it occurs to us that the words "or other county buildings" should not be construed to mean only buildings having the general characteristics of a courthouse or jail but rather should be construed to mean any and all kinds of county buildings. We do not believe that it was the intention of the legislature, after having specifically authorized the supervisors to erect and furnish a county hospital, subsection 8 of Sec. 17–309, to withhold the right to issue bonds for that purpose. To hold that Section 17–337 authorizes bond issues *only* for courthouses and jails or buildings similar to courthouses and jails would handicap the board and present an insurmountable obstacle to the performance of the duty to provide for the indigent sick and poor of the county. We are confident that no such a barrier was intended. We are aware of our decisions in such cases as White v. Moore, 1935, 46 Ariz. 48, 46 P.2d 1077; State Board of Barber Examiners v. Walker, 1948, 67 Ariz. 156, 192 P.2d 723; Russell v. Golden Rule Min. Co., 1945, 63 Ariz. 11, 159 P.2d 776; and Meyers v. Rosenzweig, 1935, 27 Ariz. 286, 232 P. 886, wherein we applied the rule of ejusdem generis in endeavoring to determine the legislative intent where the legislature had used such terms as "or any other business", "other laborer", "other instrument" or "others improvements", and where it was determined that such words were restrictive in meaning. For the reasons given we conclude that the words "other county buildings" as used in the section under consideration should not be considered to be words of limitation, nor do we think that by failing to give them a restrictive meaning that such refusal can be said to be arbitrary and not consistent with our previous holdings. See Elquest v. City of Phoenix, 68 Ariz. 277, 204 P.2d 1061.

By way of summary, we hold:

■ 1. That if the county desires to erect a county courthouse and county hos-

84

pital, following the authorization and procedure outlined in Article 3 of Chapter 17, A.C.A. 1939, and providing the funds therefor by the issuance of bonds, it may do so; and

2. That any contemplated bond issues for these purposes must be submitted to a vote of the qualified real property taxpayers of the county.

For the reasons herein stated, the judgment of the trial court is reversed with directions to enter judgment not inconsistent with the pronouncements herein made.

UDALL, C. J., and STANFORD, PHELPS and DE CONCINI, JJ., concur.